Argued and submitted March 2, decision of Court of Appeals affirmed in part on different grounds; judgment of circuit court vacated, and case remanded to circuit court for resentencing in accordance with this opinion September 10, 2010, petition for reconsideration denied February 3, 2011

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## RICHARD DALE PARTAIN,
*Respondent on Review.*

### (CC 03P3038; CA A132336; SC S057581)

239 P3d 232

Susan G. Howe, Senior Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Ernest G. Lannet, Chief Deputy Defender, Salem, argued the cause and filed the brief for respondent on review. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

GILLETTE, J.

Walters, J., dissented and filed an opinion.

## GILLETTE, J.

This case concerns the propriety of a 600-month prison sentence imposed on a defendant in a sex abuse case, after the Court of Appeals had vacated the 420-month sentence that the trial court originally had imposed. On defendant's appeal from the second sentence, the Court of Appeals reversed, holding that the trial court had violated the rule announced by this court in *State v. Turner*, 247 Or 301, 313, 429 P2d 565 (1967)—that, when a defendant is retried after a successful appeal of his or her conviction, the court in the second proceeding may not impose a harsher sentence than had been imposed in the original proceeding. *State v. Partain*, 228 Or App 329, 208 P3d 526 (2009). Before this court, the state argues that the rule from *Turner* either does not apply to the circumstances of this case or, in any event, should be abandoned in favor of a rule that permits imposition of a longer sentence on remand if the trial court is able to justify that sentence on nonvindictive grounds. We agree with the state that *Turner* should be abandoned. We also accept a version of the test that the state proposes, but we conclude that the question whether that test has been met requires further development of the record. We therefore affirm the decision of the Court of Appeals to remand the case to the trial court.

In 2003, defendant was convicted of multiple sex crimes—12 in all—in a single proceeding. At sentencing, the trial court imposed various sentences and ordered that certain of the sentences be served consecutively to others. Altogether, the sentences required defendant to serve 420 months in prison. The judgment stated, with respect to each sentence, that defendant would not be eligible for any sentence reduction program.

Defendant appealed, arguing (1) that the trial court had erred in requiring that defendant serve the sentences imposed on four of the convictions consecutively to certain other sentences, and (2) that, with respect to the same four sentences, the trial court had erred in denying defendant eligibility for sentence reduction programs without making certain findings in open court that, under ORS 137.750, are required when sentences are so limited. At some point in the appeal, the state conceded error with respect to defendant's

second argument, and joined with defendant in a motion to vacate the erroneous sentences and to remand the entire case for resentencing. The Court of Appeals granted the motion.

On remand, no new evidence or information was placed on the record. In entering its sentence on remand, the trial court discharged the four sentences that had been the focus of defendant's appeal, but structured the remaining sentences in a way that resulted in an overall term of 600 months in prison. The court did not state any reasons for imposing the lengthier overall sentence.

Defendant appealed again, this time arguing that, because the total sentence imposed on remand was longer than the total sentence imposed in the original proceeding, the sentence violated the "no harsher sentence" rule of *Turner* (described more fully below, 349 Or at 15-16). Because *Turner* was a case involving a retrial rather than a resentencing, defendant also relied on a Court of Appeals decision—*State v. Stockman*, 43 Or App 235, 603 P2d 363 (1979)—that held that the *Turner* rule applied when a case was remanded after a successful appellate challenge to a *sentence* on grounds other than excessiveness. The state responded that the rules of *Turner* and *Stockman* have been legislatively superseded by a 1993 amendment to ORS 138.222(5)(a), which provides that, when a case is remanded because of a sentencing error, the sentencing court "may impose a new sentence for any conviction in the remanded case." Or Laws 1993, ch 692, § 2(5). The state also suggested that *Turner* was directed only at sentences that are imposed by a court to punish a defendant for seeking appellate review and that, in this case, the new sentences were based solely on the abhorrent nature of the crimes.

The Court of Appeals rejected the state's contention that the legislature impliedly repealed *Turner* and *Stockman* when it later amended ORS 138.222(5)(a). *Partain*, 228 Or App at 335. The court also rejected the state's suggestion that *Turner* prohibits harsher sentences on remand only when the sentencing court's motivation was to punish the defendant for appealing: It observed that, in *Turner*, this court explicitly described the rule as a prophylactic one, adopted to avoid the difficult task of determining a trial court's motives. *Id.* at

335-36 (quoting *Turner*, 247 Or at 314). Ultimately, the Court of Appeals concluded that, under this court's decision in *Turner* and its own decision in *Stockman*, the trial court had erred in imposing a greater total sentence on remand. *Partain*, 228 Or App at 336. We allowed the state's petition for review.

The state argues that the Court of Appeals erred on two grounds: (1) the court failed to recognize that the *Turner* "no harsher sentence" rule is limited to cases in which the defendant has been *retried* after successfully challenging his or her *conviction*, and does not apply when a defendant is before a trial court solely for *resentencing* after successfully challenging the lawfulness of the original *sentence*; and (2) the court also failed to recognize that, in light of certain changes in Oregon's sentencing laws, the *Turner* rule is no longer viable. Both of those arguments call for a close examination of the *Turner* case, a task to which we now turn.

The defendant in *Turner* was convicted of assault and initially received a five-year sentence. He successfully appealed his conviction and the case was remanded for a new trial. In the second trial, defendant was convicted again, but this time the trial judge sentenced him to seven years in prison—two years more than the original trial court had imposed. The defendant appealed, arguing that the trial court could not constitutionally impose a longer prison sentence than the one imposed in the original trial.

In its opinion in *Turner*, the court described its overall methodology for analyzing the issue in terms of "weigh[ing] the public interest in being protected from persons found guilty of crimes and the individual's interest in exercising rights guaranteed him by constitution, statute or judicial decision." 247 Or at 312. The court identified the individual defendant's interest in terms of the statutory right of appeal, and it concluded that permitting a trial court to impose a more severe sentence after a successful appeal would have a "chilling effect" on a defendant's exercise of that right. *Id.* at 313. The court did not, however, explain its reasoning or identify any source of law for the balancing approach that it adopted.

The court in *Turner* then considered the public interest at issue, *i.e.*, an interest in allowing trial courts to impose

whatever lawful sentences they deemed to be appropriate, including a harsher sentence, when defendants are retried after successfully appealing from some aspect of their previous conviction. The court suggested that the public interest in such a scheme was relatively weak, rejecting, as contrary to logic and its own prior case law, most of the reasons that had been offered for upholding a harsher sentence imposed after retrial.[1] It then announced the results of its balancing analysis, holding that

> "the interest of the public and the individual can best be served by the following rule: After an appeal or post-conviction proceeding has resulted in the ordering of a retrial for errors other than an erroneous sentence, such as in [*State v. Froembling*, 237 Or 616, 391 P2d 390 (1964) and *Froembling v. Gladden*, 244 Or 314, 417 P2d 1020 (1966)], and the defendant has again been convicted, no harsher sentence can be given than that initially imposed."

*Id.*

After stating that rule, the court acknowledged that there might be some circumstances in which a harsher sentence on remand might be rational and justified—for example, when the first sentence was too lenient or when evidence relevant to sentencing that was *not* available to the judge in the first trial *is* available to the judge in the second trial. The court concluded, however, that requiring reviewing courts to distinguish between those legitimate harsher sentences and sentences that were merely vindictive would cause difficulties in judicial administration. It further concluded that the possible advantages associated with permitting trial courts to impose harsher sentences when there were nonvindictive reasons to do so were outweighed by the judicial efficiency that would result from following the simple prophylactic rule that it was announcing. *Turner*, 247 Or at 314-15.

---

[1] In particular, the court rejected each of the reasons courts in other jurisdictions had offered in defense of harsher sentences after remand—that, once reversed, an initial conviction and sentence are a "nullity," leaving the trial court on remand complete freedom to pass sentence as if the initial sentence had never existed; that the traditional discretion granted to trial judges in sentencing matters demanded that an otherwise lawful second sentence be upheld; and that, by appealing, a criminal defendant essentially *consents* to any lawful sentence that the trial court might impose on remand. 247 Or at 312-13.

The court concluded by discussing the legal source of its new rule:

> "There also remains the issue of whether the rule pro-posed should be grounded upon the due process or double jeopardy provisions of the state or federal constitutions or whether it should be grounded upon the statutes or the common law.

> "We do not find it necessary to decide the constitutional issues as we conclude that, when the state grants a criminal appeal as a matter of right to one convicted of a crime, as it has, our procedural policy should be not to limit that right by requiring the defendant to risk a more severe sentence in order to exercise that right of appeal. ORS 138.020."

*Id.* at 315. Although the court in *Turner* thus proclaimed the rule to be a prudential one, the reference to the state "grant[ing] a criminal appeal as a matter of right" and the citation to ORS 138.020 indicate that the rule in some sense derived from the court's particular understanding of the legislative intent behind that statute.[2]

Since *Turner* was decided in 1967, the rule it announced has been assiduously followed—and sometimes extended[3]—by the Court of Appeals, and it has been cited by this court as established law on at least three occasions. *See State ex rel Dillavou v. Foster*, 273 Or 319, 324 n 8, 541 P2d 811 (1975) (to deny defendant who appeals credit for time spent in jail pending appeal effectively penalizes the defendant for appealing and, thus, violates rule of *Turner*); *State v. Holmes*, 287 Or 613, 617-19, 601 P2d 1213 (1979) (*Turner* rule precluding imposition of more lengthy sentence after successful appeal and retrial does not apply in the context of a probation revocation proceeding); *State v. Martin*, 288 Or 643, 645-47, 607 P2d 171 (1980) (consistent with principle announced in *Turner*, defendant whose conviction is set aside

---

[2] The referenced statute, ORS 138.020, has not been changed in any significant respect since *Turner*. It provides: "Either the state or the defendant may as a matter of right appeal from a judgment in a criminal action in the cases prescribed in ORS 138.010 to 138.310, and not otherwise."

[3] *See, e.g., Stockman*, 43 Or App at 235-43, applying *Turner*'s prohibition on harsher sentences after remand and retrial to case in which the remand was for resentencing only.

on his motion for a new trial cannot, on remand, be prosecuted for additional charges arising from the same criminal episode). Of those three cases, only *Dillavou* truly embodies a *Turner*-like approach. Still, *Turner*'s status as a precedent of long standing is undeniable.

That brings us to the more ambitious of the state's two arguments[4]—that we should abandon the *Turner* rule altogether in favor of a sentencing rule that is more specifically focused on the one legitimate concern that such resentencing raises—the possibility that trial courts may employ their sentencing authority to punish defendants for having the temerity to appeal earlier convictions and sentences. The state acknowledges that defendants and courts have relied on the *Turner* rule for a long time, but it argues that the *Turner* rule is neither constitutionally nor legislatively compelled and that, for a variety of reasons, this court can and should set it aside.

In so arguing, the state does not directly acknowledge this court's general policy of adhering to precedent or the kind of showing that we generally have required before we will consider overturning a decision of such long standing. But, acknowledged or not, the reality of the state's burden is clear: Although this court arguably is more kindly disposed to requests to reconsider precedent when, as here, the precedent does not rest directly on the court's interpretation of a particular statute or constitutional provision, that does not mean that we will lightly set aside a decision of this sort. In fact, we have stated that there are three grounds on which we will reconsider an established nonstatutory rule:

> "(1) that an earlier case was inadequately considered or wrong when it was decided; (2) that surrounding statutory law or regulations have altered some essential legal element assumed in the earlier case; or (3) that the earlier rule was grounded in and tailored to specific factual conditions, and that some essential factual assumptions of the rule have changed. Without some such premise, the court has no grounds to reverse a well-established rule beside judicial

---

[4] Because we ultimately agree with the state that the *Turner* rule must be overruled, there is no need to consider its alternative argument—that, assuming the rule is good law, it is inapplicable to the present case.

fashion or personal policy preference, which are not sufficient grounds for such a change."

*G.L. v. Kaiser Foundation Hospitals, Inc.*, 306 Or 54, 59, 757 P2d 1347 (1988) (citations omitted).[5]

■ The state has not expressly directed its analysis to any of those three "premises." Instead, the state's primary objections to the *Turner* rule are that it is "too restrictive," "too unwieldy," and that it is not *required* by this state's constitutional or statutory law. The state also argues that the rule is inconsistent with this court's expressed reluctance to interfere with a trial court's sentencing discretion and with its expressed view that judicial review of criminal sentences must be limited because the setting of criminal penalties is a purely legislative function. *See, e.g., State v. Smith*, 128 Or 515, 524, 273 P 323 (1929) (it is the province of the legislature to establish penalties for crimes); *State v. Montgomery*, 237 Or 593, 595, 392 P2d 642 (1964) (court should not disturb discretion of the trial court in fixing term of imprisonment). Finally, the state argues that, since *Turner* was decided, the legislature has amended the statutes pertaining to criminal appeals in ways that implicitly conflict with the *Turner* rule. Unlike the state's other arguments, its last argument is relevant to one of the accepted grounds for reconsidering established precedent—that "surrounding statutory law or regulations have altered some essential legal element assumed in the earlier case." *Kaiser Foundation Hospitals, Inc.*, 306 Or at 59.

We note, in that regard, that, although the court in *Turner* purported to erect a prudential rule, its justification for that rule largely derived from an unspoken "gloss" on ORS 138.020—that the right of appeal that that statute

---

[5] Although we focus on a framework that was designed for reconsideration of common-law holdings, we acknowledge that *Turner* is not, strictly speaking, a common-law rule: As we have observed, the *Turner* court purported to be resting its decision on purely prudential grounds but, at the same time, also appeared to derive support for its rule in the terms of ORS 138.020, *i.e.*, the statutory right of appeal. In the end, we would say that the *Turner* decision is neither a case of statutory construction nor a common-law rule, but simply turns on an unexamined *assumption* about the legislative intent behind ORS 138.020. As such, it is not clear that resort to *Kaiser Foundation Hospitals, Inc.*, is necessary—but, for the sake of completeness, we proceed as if it were.

.

guarantees also includes a right to be shielded from outcomes that might "chill" a defendant's desire to exercise the right, including the risk of a longer sentence. It would seem, in fact, that that gloss on ORS 138.020 was, in *Kaiser Foundation Hospitals, Inc.*, terms, an "essential legal element" assumed in *Turner.* If so, then the question for this court, with respect to the state's bid for reconsideration of *Turner*, is whether the 1993 amendment to ORS 138.222(5)(a) (on which the state relies), or any other alterations in the surrounding law, has undermined that assumption about the right of appeal that the court in *Turner* thought that ORS 138.020 conveyed. If that assumption has been substantially undermined by more recent enactments, then the *Turner* rule itself is an appropriate candidate for reconsideration.

The 1993 amendment to ORS 138.222(5)(a), which the state has invoked, is germane to that inquiry. Enacted some 25 years after *Turner* was decided, the relevant portion of ORS 138.222(5)(a) provides:

> "If[, in a criminal appeal,] the appellate court determines that the sentencing court, in imposing a sentence in the case, committed an error that requires resentencing, the appellate court shall remand the entire case for resentencing. *The sentencing court may impose a new sentence for any conviction in the remanded case.*"

(Emphasis added.) As noted, the Court of Appeals rejected the state's suggestion that, by enacting that provision, the legislature implicitly overruled *Turner.* We agree with the Court of Appeals' conclusion as far as it goes: There is nothing in the text, context, or legislative history of ORS 138.222(5)(a) that suggests that the statute was specifically directed at the holding in *Turner.*

On the other hand, it appears that enactment of the quoted amendment *did* alter the legal landscape for criminal appeals in a way that undermines the assumptions in *Turner* about the dimensions of the right of appeal guaranteed by ORS 138.020. The amendment unambiguously provides that, when a case is remanded because of a particular sentencing error, the sentencing court may impose different sentences on any and all counts—even those not affected by the identified error. Although the amendment does not explicitly state

that that authority extends to *increasing* a defendant's overall sentence, the scope of the statutory wording allows sentencing courts to replace terms in a prior sentencing decision respecting certain counts that were favorable to the defendant with less favorable ones respecting those counts, with one reasonable consequence of such action by the sentencing court being a collection of lawful sentences whose total exceeds defendant's earlier sentence. The amendment thus strikes a different balance than did *Turner* with respect to the discretion of trial courts to impose the lawful sentences that they find to be appropriate.

The history of the amendment confirms that general sense of the legislature's intentions. As defendant notes, the amendment was adopted in response to a Court of Appeals case, *State v. Smith*, 116 Or App 558, 842 P2d 805 (1992), *adh'd to on recons*, 120 Or App 438, 852 P2d 934 (1993), which held that, upon remand for a sentencing error with respect to one charge, a trial court could not resentence on certain other offenses whose sentences were unchallenged, thereby restructuring the collective sentences in the case so that the defendant was subject to the same total sentence as previously had been imposed. Proponents of the amendment offered it as a mechanism for "overruling" *Smith*, which they viewed as "unjustly favor[ing] convicted felons." Exhibits, House Appropriations Committee, SB 1043 (1993) (letter from Fred Avera, Polk County District Attorney, and Dale Penn, Marion County District Attorney, proposing amendment to SB 1043). Although there is nothing in the history that establishes a legislative intent to affirmatively authorize the imposition of sentences after a remand that are *longer overall*, the fact that the legislature appears to have been motivated by a disagreement with the *Smith* analysis does not comport with *Turner's* notion that the right of appeal guaranteed by ORS 138.020 must be provided free of any risk of unfavorable alterations in sentences.

Other post-*Turner* statutes also are at odds with the special weight that *Turner* assigned to the right of criminal defendants to appeal free of the risk of a more severe sentence on remand. For example, ORS 138.222(5)(b), adopted in 2005 (Or Laws 2005, ch 563, § 1), extends the general approach of ORS 138.222(5)(a), allowing trial courts to

resentence a defendant on any judgments of convictions that are affirmed on appeal, if any other judgment of conviction in the same case is reversed on appeal.[6] Again, the amendment indicates that the legislature did not share the view of a criminal defendant's right to a risk- and barrier-free appeal that the court espoused in *Turner*. The legislature's philosophical distance from the *Turner* approach is still further illustrated by the 1989 legislature's grant of authority to the state to appeal from sentences in felony cases on grounds that the law required a different sentence. *See* ORS 138.222(4), (7) (collectively providing that state may appeal defendant's sentences on such grounds).

■ One final illustration helps make our point. For a number of years, the court relied on what it called a "rule of lenity." That rule, which also was prudential, was used by the court in doubtful cases as a basis for giving criminal statutes a limited reading—*i.e.*, for limiting the sweep of legislative enactments. *See State v. Linthwaite*, 295 Or 162, 179, 665 P2d 863 (1983) (describing and applying doctrine as basis for holding that defendant's attack on four victims with a knife permitted only one punishment); *State v. Welch*, 264 Or 388, 393-94, 505 P2d 910 (1973) (applying rule in holding that person uttering two forged instruments committed only one crime). The "rule" was abrogated by the legislature when it adopted ORS 161.025(2), which directs courts to construe penal statutes "according to the fair import of their terms." *See Bailey v. Lampert*, 342 Or 321, 327, 153 P3d 95 (2007) (so holding). This history further illustrates the legislature's systematic rejection of the policy and value judgments underlying *Turner*.

We have suggested that the *Turner* decision rested on an unexamined elaboration on the right of appeal guaranteed by ORS 138.020—*i.e.*, that the right of appeal necessarily includes the right to have the length of any resentence limited to the length of the sentence originally imposed. We

---

[6] ORS 138.222(5)(b) provides:

"If the appellate court, in a case involving multiple counts of which at least one is a felony, reverses the judgment of conviction on any count and affirms other counts, the appellate court shall remand the case to the trial court for resentencing on the affirmed count or counts."

have assumed, without actually deciding, that that reading of ORS 138.020 had some basis in the law when *Turner* was decided. But, based on changes in the law pertaining to criminal sentencing and criminal appeals since *Turner* was decided, as well as the legislature's rejection of the "rule of lenity," it now is clear that the *Turner* court's expansive reading of the right to appeal in ORS 138.020 no longer is viable, if it ever was. Put differently: The legal landscape surrounding the right of criminal defendants to appeal has changed in a way that undermines the essential premise for the holding in *Turner*. We therefore are free to reconsider that holding in the light of current law.[7]

■ ■ On reconsideration, we conclude that the *Turner* rationale has been overtaken by the passage of time and by legislation. As noted, *Turner* itself did not rest on any constitutional basis and no persuasive argument has been advanced that the Oregon Constitution requires that criminal defendants be shielded from the possibility that, on remand after a successful appeal, a sentencing court will impose a lengthier sentence than that which it originally imposed. In that regard, we note that the prohibition on double jeopardy of Article I, section 12, which has been put forward as a basis for such a rule, pertains to successive *prosecutions* and not to resentencing, while the alternative proffered basis—due process—is a federal, not an Oregon, constitutional guarantee. Furthermore, the suggestion in *Turner* that such a blanket rule is somehow justified by ORS 138.020, to ensure a full realization of the right of appeal that that statute was enacted to guarantee, is wrong in the context of the present legal landscape (and was both not fully considered and wrong in 1965): The statute was concerned with who could appeal and what could be appealed. In our view, it did not—even by implication—deal with what might be a permissible outcome if a case were reversed and remanded. Finally, we cannot justify such a blanket rule, as the court did in *Turner*, as a purely prudential safeguard.

---

[7] Our decision to reconsider the *Turner* rule on this basis is not meant to suggest that the rule is not also susceptible to reconsideration under another of the *Kaiser Foundation Hospitals, Inc.*, criteria, *viz.*, that *Turner* was "inadequately considered or wrong when it was decided." 306 Or at 59.

Whatever the possibility of vindictive sentencing, the legislature remains competent to deal with it explicitly and, if it does not do so, both the state and federal constitutions provide the appropriate legal backstop. This court's policy-driven intervention in that statutory/constitutional arrangement, while doubtless well-meaning, inappropriately assumed on the part of the court policy-making responsibility that belongs elsewhere. *Turner* is overruled.

■ While we reject *Turner*'s absolutist approach to the longer-sentence-on-remand issue, that does not mean that we are turning a blind eye to the problem that such sentences can pose. When, on remand of a criminal defendant's case after a successful appeal, a trial court imposes a longer sentence, it is natural to be concerned that the enhanced penalty may be intended to punish the defendant for his or her success on appeal. And, to the extent that that sort of vindictive sentencing occurs, it undoubtedly is unlawful: The statutory right of appeal provided at ORS 138.020 may carry with it risks, as we today hold, but no conceivable construction of the statute's wording supports the idea that the legislature intended to grant to trial judges the authority to use their sentencing power to impose more lengthy sentences on remand for the purpose of punishing defendants for bringing appeals.

■ On the other hand, we can posit a number of legitimate reasons for a trial court to impose a longer sentence on remand or after retrial—including the fact that the trial court in the second sentencing proceeding has information about the defendant and his or her actions that was not available at the first or the fact that the trial court simply erred in applying sentencing statutes or guidelines. There is no basis for saying that the legislature intends that such exercises of a trial court's sentencing discretion must be barred, in order to ensure against the imposition of vindictive (and unlawful) sentences. There also is no basis for saying that either the Oregon or federal constitutions bars all such choices.

But the problem remains: How are Oregon courts to deal with claims of vindictive sentencing? As we have noted, it is not clear that any Oregon constitutional provision answers the question directly. And, as we also have noted, we

think that it is inappropriate to create or announce a rule in this area of the law without real constitutional or statutory support. (To do otherwise would be simply to substitute our policy-making assessments for those of the court in *Turner*. If it was inappropriate for that court to do what it did, it would be just as inappropriate for this court to act in like manner.)

As it happens, there is a source of law. The Supreme Court of the United States, acting under the Due Process Clause of the Fourteenth Amendment, has addressed the problem and laid out a method of dealing with it.

In *North Carolina v. Pearce*, 395 US 711, 726, 89 S Ct 2072, 23 L Ed 2d 656 (1969), the Court was faced with two cases in which a defendant's sentence on retrial exceeded the sentence that each defendant had received at that defendant's initial sentencing. The defendants urged that longer sentences on retrial offended the Fifth Amendment's double jeopardy provision, as well as the Equal Protection Clause of the Fourteenth Amendment. The Court held that neither constitutional provision prohibited such sentences. 395 US at 723.

The Court then turned to an analysis of the issue under the Due Process Clause of the Fourteenth Amendment. For reasons that soon will be apparent, we set out the Court's analysis at some length:

> "It is hardly to be doubted that it would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside. * * * And the very threat inherent in the existence of such a punitive policy would, with respect to those still in prison, serve to 'chill the exercise of basic constitutional rights.' * * * [Moreover, and] even if the first conviction has been set aside for nonconstitutional error, the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be no less a violation of due process of law."

*Id.* at 723-25 (citations and footnotes omitted).

The Court then went on to deliver the following pronouncement:

"Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

"In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing procedure.[8] And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal."

*Id.* at 725-26 (footnotes and citations omitted).

■■ The foregoing federal constitutional rule is one that Oregon courts must follow with respect to resentencing offenders to longer sentences. This court could, of course, announce additional requirements under our own constitution or pursuant to statute. As noted, however, we find no obvious basis in either source of law for doing so. We therefore decline to posit anything other than the *Pearce* standard, as modified by the Court in the manner noted, as the applicable standard in cases of resentencing in Oregon: If an Oregon trial judge believes that an offender whom the judge is about to resentence should receive a more severe sentence than the one originally imposed, the judge's reasons must

---

[8] This specific requirement that any conduct on the part of the defendant that a court relies on to justify a longer sentence must have occurred "after the time of the original sentencing proceeding" is no longer applicable. *See, e.g., Texas v. McCullough*, 475 US 134, 141-42, 106 S Ct 976, 89 L Ed 2d 104 (1986) (allowing judge to consider newly learned information about defendant that involved acts committed by defendant before first sentencing proceeding; stating that to do otherwise could lead to "bizarre conclusion").

affirmatively appear on the record. Those reasons must be based on identified facts of which the first sentencing judge was unaware, and must be such as to satisfy a reviewing court that the length of the sentence imposed is not a product of vindictiveness toward the offender. Absent such facts and reasons, an unexplained or inadequately explained increased sentence will be presumed to be based on vindictive motives, and will be reversed.

■■ Turning to this case, the Court of Appeals, based on *Turner*, reversed the 600-month sentence that the trial court imposed on remand. In light of our decision to overrule *Turner* (an outcome the Court of Appeals could not have anticipated), the Court of Appeals' *rationale* was incorrect: We now recognize that a trial court lawfully may impose a harsher sentence on a defendant after retrial or remand, as long as the court's grounds for doing so are not directed at punishing the defendant for appealing his or her original convictions or sentences. However, in light of the trial court's failure to explain on the record in this case its reasons for imposing the longer sentence on remand, we cannot say that the Court of Appeals was incorrect in reversing the trial court's *judgment*. That court needed more information than is available in the present record in order to assure itself that the sentencing court's choice of sentence on remand was not a vindictive one. The trial court in this case should have an opportunity to clarify the record in that respect; we therefore remand the case to the trial court for that purpose. On remand, the trial court may choose to impose a sentence that does not exceed the original total sentence of 420 months, which would not require a statement of the court's reasons for imposing the sentence. If the court chooses, instead, to impose a longer or otherwise more severe total sentence, it must place on the record one or more nonvindictive reasons for doing so.[9]

---

[9] The requirement of a statement of nonvindictive reasons is essentially the outcome for which the state advocates, although we impose it for reasons of judicial administration, rather than—as the state would have it—as a substitute prudential rule that somehow is "more fair." Defendant, for his part, never advocated either for rejection of the *Turner* rule or for a remand for resentencing; he preferred *Turner* as it was. However, we cannot be satisfied that the *root concern* of defendant's second trip through the appellate process—vindictive resentencing—is not present on this record. The remand to the sentencing court addresses that problem.

The decision of the Court of Appeals is affirmed in part on different grounds. The judgment of the circuit court is vacated, and the case is remanded to the circuit court for resentencing in accordance with this opinion.

**WALTERS, J.,** dissenting.

In 1967, a defendant had a right, under Oregon statute, to appeal a wrongful conviction. In 1967, a trial court had discretion, under Oregon statutes, to decide the sentence that a defendant should receive if convicted for a second time after a successful appeal. In 1967, in *State v. Turner*, 247 Or 301, 429 P2d 565 (1967), this court decided a question at the confluence of those statutes: whether a defendant who successfully exercised the right to appeal a wrongful conviction and had it overturned could be subjected to a harsher sentence than that originally imposed. The court decided, in a unanimous opinion, that he could not.

The majority overrules *Turner* as a "well-meaning" but "inappropriate[ ]" assumption of policy-making responsibility "that belongs elsewhere." 349 Or at 23. I agree with the majority that, in 1967, the legislature had authority to decide the question presented in *Turner*. However, the legislature had not exercised that authority and Oregon statutes neither explicitly permitted nor explicitly precluded a sentencing judge from imposing a harsher sentence in the circumstance presented. Therefore, I cannot agree that the court in *Turner* inappropriately assumed a legislative role when it decided the question before it.

In the absence of express statutory guidance, the court in *Turner* considered the competing public interests reflected in the statutes that the legislature had enacted—the public interest in "permit[ting] a court to assess its sentence upon the most complete and current information" and the public interest in "correction of an erroneously conducted trial." 247 Or at 313-14. The court decided that because the legislature had granted a right of criminal appeal and because the "public has no interest in foreclosing the correction of an erroneously conducted trial," the appropriate procedural policy should be "not to limit that right by requiring the defendant to risk a more severe sentence in order to exercise that right of appeal." *Id*. at 313, 315. A different rule, the

court decided, "would 'chill' a defendant's desire to correct an erroneously conducted initial trial," *id.* at 313, and require a reviewing court to "make a subjective determination whether the new information justified and was in fact the motive for the more severe sentence," raising "difficulties in judicial administration," *id.* at 314.

The court in *Turner* was not required to reach that particular result and could have ruled, as the majority in this case apparently would have, that the fact that the legislature had not expressly precluded a harsher sentence on remand permitted just that. But the court did not do so. During the 43 years that have intervened between *Turner* and *Partain*, the Oregon legislature had authority to overrule or alter the court's decision in *Turner*. But the legislature did not do so. Given the authority of those entities, it is, in my view, the majority in *Partain* that assumes policy-making responsibility that belongs elsewhere.

First, the majority extends its authority beyond that necessary to decide the case before it. In this case, the trial court imposed a harsher sentence on defendant after defendant successfully appealed an error in sentencing, not an error in the underlying conviction. The rule that the court announced in *Turner* explicitly did not address that circumstance. The court stated:

> "After an appeal or post-conviction proceeding has resulted in the ordering of a retrial for errors *other than an erroneous sentence * * * and the defendant has again been convicted,* no harsher sentence can be given than that initially imposed."

247 Or at 313 (emphasis added). Instead of overruling *Turner*, the majority could have refused to extend its rule to successful appeals of sentencing errors.

Second, the majority reaches a different result than did the court in *Turner* without an argument from the state that the grounds for overturning longstanding precedent as stated in *G.L. v. Kaiser Foundation Hospitals, Inc.*, 306 Or 54, 59, 757 P2d 1347 (1988), are satisfied, 349 Or at 18, and without itself reaching that conclusion.[1] The majority relies,

---

[1] The majority does state, mirroring the words of *Kaiser Foundation Hospitals, Inc.*, that the court's decision in *Turner* "was both not fully considered and wrong in

for reconsideration, on statutes enacted by the Oregon legislature since *Turner* but does not conclude, and cannot conclude, in the words of *Kaiser Foundation Hospitals, Inc.*, that those statutes "altered some essential legal element assumed in the earlier case." *Kaiser Foundation Hospitals, Inc.*, 306 Or at 59.

The statutes on which the majority relies neither limit a defendant's right to appeal a wrongful conviction nor indicate a legislative intent to expose a defendant to a risk that he or she will receive a harsher sentence if successful in appealing a wrongful conviction. ORS 138.222(5)(a) overrules a Court of Appeals case, *State v. Smith*, 116 Or App 558, 842 P2d 805 (1992), *adh'd to on recons*, 120 Or App 438, 852 P2d 934 (1993), and ensures that a trial court may, on remand from a successful appeal of a *sentencing* error, reconstruct a collective sentence to impose the same total sentence previously imposed. ORS 138.222(5)(a) does not address remand from a wrongful conviction, much less grant trial courts authority to impose harsher sentences after a successful appeal from a wrongful conviction. ORS 138.222(5)(b) does address remand from a successful appeal of a conviction, but only permits trial courts to resentence the defendant on *affirmed* convictions. It does not address sentencing on remand from *reversed* convictions, nor does it grant trial courts authority to impose harsher sentences after a successful appeal or indicate a philosophical interest in permitting such sentences.

ORS 138.222(4), (7) permits the state to appeal from sentences in felony cases on the ground that the law required a different sentence. Granting the state a right to insist that a lawful sentence is imposed does not indicate a legislative intent to permit a trial court to impose a harsher sentence on a defendant who exercises the same right. To me, it indicates a legislative interest to ensure that any sentence that is imposed be legally sound. *Turner* is consistent with that intent. If a defendant knows that appeal of an invalid sentence will expose him or her to the risk of a harsher sentence, the defendant will be less likely to seek correction of that

1965." 349 Or at 22. However, the majority does so only after already deciding that reconsideration is appropriate for the statutory reasons that it discusses. *Id.*

sentence—a correction that the legislature deems to be in the public interest.[2]

The majority does not contend that the statutes on which it relies alter the right to appeal a wrongful conviction or any other essential element of *Turner* but instead asserts that those statutes are "at odds" with the "right of criminal defendants to appeal free of the risk of a more severe sentence on remand." 349 Or at 20. I do not perceive the conflict that the majority observes, but, more importantly, the majority itself recognizes that Oregon law continues to grant criminal defendants the right to appeal free from the very risk of a more severe sentence that *Turner* addresses—the risk of vindictive sentencing:

> "[T]o the extent that that sort of vindictive sentencing occurs, it undoubtedly is unlawful: The statutory right of appeal provided at ORS 138.020 may carry with it risks, as we today hold, but no conceivable construction of the statute's wording supports the idea that the legislature intended to grant to trial judges the authority to use their sentencing power to impose more lengthy sentences on remand for the purpose of punishing defendants for bringing appeals."

349 Or at 23.

After construing Oregon law to preclude vindictive sentencing, the majority notes that the Due Process Clause of the federal constitution includes the same prohibition. The majority then decides that the rule devised by the Supreme Court in *North Carolina v. Pearce*, 395 US 711, 89 S Ct 2072, 23 L Ed 2d 656 (1969), is sufficient to address that concern. 349 Or at 25. In so doing, the majority calls attention to the essential role of the judiciary and makes my point.

The Due Process Clause does not state explicitly the procedure that a reviewing court should use to protect against vindictive sentencing. Nevertheless, the Supreme Court determined, in *Pearce*, that, whenever a judge imposes a more severe sentence after a new trial, the reasons for doing so must affirmatively appear. *Id.* at 725-26. The

---

[2] *See State v. Thompson*, 231 Or App 193, 217 P3d 697 (2009) (more severe sentence permitted on resentencing when statutorily mandated).

Supreme Court did not exceed its authority in imposing that requirement; it fulfilled its constitutional role. The court in *Turner* did the same. The difference is not in the authority exercised, but in the rule crafted.

In the years since *Pearce*, the Supreme Court has made clear that *Pearce* does not state a bright-line test or even impose a presumption of vindictiveness for harsher sentences:

> "While the *Pearce* opinion appeared on its face to announce a rule of sweeping dimension, our subsequent cases have made clear that its presumption of vindictiveness 'do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial.' "

*Alabama v. Smith*, 490 US 794, 799, 109 S Ct 2201, 104 L Ed 2d 865 (1989) (quoting *Texas v. McCullough*, 475 US 134, 138, 106 S Ct 976, 89 L Ed 2d 104 (1986)). As a result, by adopting the *Pearce* rule as the only test of the validity of a sentence on remand after a successful appeal, the majority requires reviewing courts to do just what the court in *Turner* sought to avoid; *viz.*, deciding whether the case before them is one "in which there is a 'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Nulph v. Cook*, 333 F3d 1052, 1057 (9th Cir 2003) (quoting *Alabama v. Smith*, 490 US at 799).

Oh, the endless questions and appeals and consumption of judicial time we have purchased.

Is there a presumption of vindictiveness? *See Texas v. McCullough*, 475 US at 138-40 (no presumption of vindictiveness when defendant resentenced by trial judge after originally sentenced by a jury); *United States v. Goodwin*, 457 US 368, 384, 102 S Ct 2485, 73 L Ed 2d 74 (1982) (presumption of vindictiveness not warranted in the pretrial plea negotiation context, even though "[t]here is an opportunity for vindictiveness"); *Chaffin v. Stynchcombe*, 412 US 17, 26-27, 93 S Ct 1977, 36 L Ed 2d 714 (1973) (no presumption of vindictiveness when defendant is resentenced by a jury); *Colten v. Kentucky*, 407 US 104, 116-17, 92 S Ct 1953, 32 L Ed 2d 584 (1972) (no presumption of vindictiveness when defendant convicted of misdemeanor in an inferior

court was later convicted of a felony after trial *de novo* in a court of general jurisdiction).

If there is a presumption of vindictiveness, has it been overcome? *See Nulph,* 333 F3d at 1059-60 (insufficient evidence in the record that petitioner elected to apply an unfavorable rule at parole board hearing; therefore state did not rebut presumption of vindictiveness); *Bono v. Benov,* 197 F3d 409, 421 (9th Cir 1999) (victim letter contained in "contemporaneous notes and memoranda," but not in written notice of decision, insufficient to rebut the presumption of vindictiveness); *Hurlburt v. Cunningham,* 996 F2d 1273, 1276 (1st Cir 1993) (presumption rebutted by judge's reference to presentence report, the defendant's record, and what he observed during trial); *United States v. Gallegos-Curiel,* 681 F2d 1164, 1168 (9th Cir 1982) (burden shifts to prosecution to show that increase in the severity of the charges did not stem from vindictive motive or was justified by independent reasons or intervening circumstances).

If the Oregon legislature had decided that the bright-line rule adopted by the court in *Turner* to protect the right of appeal and guard against vindictive sentencing was too restrictive, that times have changed, and that reviewing courts of this state should determine, instead, whether sentencing judges, in truth, were vindictive, I would, of course, apply that rule. But absent clear legislative direction to do so, I would not subject Oregon judges to that inquiry. I would not disturb the basic premise upon which *Turner* rested, and rested for 43 years—that a defendant should not be required " 'to barter with his life for the opportunity of exercising' " the right to a criminal appeal. *Turner,* 247 Or at 316 (quoting *State v. Wolf,* 46 NJ 301, 309, 216 A2d 586, 590 (1966)). I respectfully dissent.