Argued and submitted January 17, affirmed October 16, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSEPH WORTH, JR.,
*Defendant-Appellant.*

Multnomah County Circuit Court
060532697; A165894

452 P3d 1041

This case is before the Court of Appeals for a third time. When defendant filed his initial notice of appeal, no harsher sentence could be imposed on remand than that initially imposed at trial, pursuant to *State v. Turner*, 247 Or 301, 429 P2d 565 (1967). Defendant's appeal was successful, and the Court of Appeals remanded the case for a new trial. While defendant awaited his remanded trial, the Supreme Court disavowed *Turner* in *State v. Partain*, 349 Or 10, 239 P3d 232 (2010), allowing a trial court to impose a harsher sentence on remand than that originally imposed at trial. Defendant was retried and, indeed, received a harsher sentence than his first. Another appeal, remand, and trial followed, and defendant again received a sentence harsher than his first. In the current appeal, defendant asserts that application of *Partain* violates the Ex Post Facto Clause of Article I, section 21, of the Oregon Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Held*: The Ex Post Facto Clause of Article I, section 21, of the Oregon Constitution generally applies to only legislative action, not to judicial decision-making. The change from *Turner* to *Partain* was not a legislative action. Further, applying *Partain* to defendant's case did not violate principles of due process because it was not unexpected as the same attorneys litigated both his case and *Partain* simultaneously. Additionally, *Partain* could not be construed as indefensible by reference to the law expressed prior to its announcement.

Affirmed.

Thomas M. Ryan, Judge.

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. Also on the brief were Frederick M. Boss, Deputy Attorney General, and Benjamin Gutman, Solicitor General.

Before Powers, Presiding Judge, and Egan, Chief Judge, and James, Judge.

JAMES, J.

Affirmed.

**JAMES, J.**

This is the third time this case has been before us on appeal. In this decision (*Worth III*), we must confront an issue left unresolved in *State v. Worth*, 274 Or App 1, 360 P3d 536 (2015), *rev den*, 359 Or 667 (2016) (*Worth II*). Specifically, defendant argues (as he did in *Worth II*) that application of *State v. Partain*, 349 Or 10, 239 P3d 232 (2010)—which permits, subject to certain limitations, the imposition of a harsher sentence on remand following an appeal than that which was originally imposed—to his case would violate Article I, section 21, of the Oregon Constitution, which states that "[n]o *ex-post facto* law * * * shall ever be passed." Alternatively, defendant argues that application of *Partain* in this instance would violate principles of notice, foreseeability, and fair warning guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We affirm.

An understanding of the issues present in this appeal requires a detailed recitation of the procedural timing of the life of this case. Defendant's first trial occurred in February 2007. A jury found defendant guilty of multiple sexual crimes. The court sentenced defendant to consecutive Measure 11 sentences of imprisonment: 90 months on Count 1; 75 months each on Counts 4, 5, and 6; 100 months on Count 7; and 70 months on Count 8, for a total of 485 months in prison. Defendant chose to appeal that judgment of conviction, filing his notice of appeal in July 2007. He was represented in that appeal by the Oregon Office of Public Defense Services (OPDS). At that time, pursuant to *State v. Turner*, a defendant considering the costs and benefits of prosecuting an appeal understood that "[a]fter an appeal or post-conviction proceeding has resulted in the ordering of a retrial for errors other than an erroneous sentence * * * and the defendant has again been convicted, no harsher sentence can be given than that initially imposed." 247 Or 301, 313, 429 P2d 565 (1967). We took the appeal under advisement on March 31, 2009.

While we had defendant's appeal under advisement, the state petitioned for review by the Supreme Court of our decision applying the *Turner* rule in *State v. Partain*, 228

Or App 329, 208 P3d 526 (2009). In that petition, the state explicitly asked the Supreme Court to disavow the *Turner* rule and hold that a defendant could receive a harsher sentence on retrial, following a successful appeal. The defendant in *Partain*, also represented by OPDS, filed a response to the state's petition for review arguing that *Turner* should not be overruled.

In *State v. Worth*, 231 Or App 69, 72, 218 P3d 166 (2009), *rev den*, 347 Or 718 (2010) (*Worth I*), we reversed defendant's conviction and remanded for a new trial. Our opinion issued September 30, 2009. Approximately one week later, the Supreme Court granted the state's petition for review in *Partain*.

After the Supreme Court granted the petition for review in *Partain*, the state petitioned for review of our decision in *Worth I*. Although the Supreme Court ultimately denied that petition, that process delayed issuance of the appellate judgment until April 2010. By that time, oral arguments in *Partain* had been held before the Supreme Court. And although the Supreme Court's opinion had not yet issued in *Partain*, the petition, the response to the petition, the competing merits briefs, and the oral argument all clearly indicated—at a minimum to the attorneys involved in the litigation, if not the wider bar—that the continued applicability of *Turner* was being challenged.

On September 10, 2010, the Supreme Court disavowed *Turner* in *Partain*, holding that a defendant can receive a harsher sentence following an appellate remand, subject only to the federal constitutional limits proscribed by *North Carolina v. Pearce*, 395 US 711, 719, 89 S Ct 2072, 23 L Ed 2d 656 (1969):

> "We therefore decline to posit anything other than the *Pearce* standard, as modified by the Court in the manner noted, as the applicable standard in cases of resentencing in Oregon: If an Oregon trial judge believes that an offender whom the judge is about to resentence should receive a more severe sentence than the one originally imposed, the judge's reasons must affirmatively appear on the record. Those reasons must be based on identified facts of which the first sentencing judge was unaware, and

must be such as to satisfy a reviewing court that the length of the sentence imposed is not a product of vindictiveness toward the offender. Absent such facts and reasons, an unexplained or inadequately explained increased sentence will be presumed to be based on vindictive motives, and will be reversed."

*Partain*, 349 Or at 25-26.

Defendant's second trial began 11 days later, on September 21, 2010. But there, unlike in the first trial, the state alleged defendant to be a dangerous offender, subject to sentencing requirements pursuant to ORS 161.725. The jury found defendant guilty of the same charges, various sentencing enhancement facts, and dangerous-offender criteria on each charge. The trial court sentenced defendant as a dangerous offender and imposed consecutive 30-year indeterminate sentences on each conviction, for a total of 120 years (1,440 months) in prison. The trial court imposed consecutive determinate sentences of 240 months on Count 1; 90 months on Count 4; 144 months on Count 7; and 120 months on Count 8, resulting in a minimum incarceration term of 594 months. The court merged Counts 2, 5, and 6. Defendant appealed.

In *Worth II*, this court vacated defendant's sentence and remanded for resentencing after concluding that the trial court erred in failing to apply the 400 percent rule to limit the determinate component of the dangerous-offender sentences. 274 Or App at 38-40. In light of our disposition, we explicitly declined to reach defendant's due process and *ex post facto* challenges to the trial court's increased sentence. *Id*. at 40.

On resentencing following *Worth II*, the trial court resentenced defendant as a dangerous offender pursuant to ORS 161.725 and imposed consecutive 30-year indeterminate dangerous offender sentences on each conviction, for a total of 120 years (1,440 months). The trial court imposed consecutive determinate sentences of 240 months on Count 1, 36 months on Count 4, 72 months on Count 7, and 72 months on Count 8, resulting in a minimum incarceration term of 420 months. This appeal followed.

Turning now to the merits, we review whether the application of a change in the law violates the state constitutional prohibition on *ex post facto* laws for errors of law. *See State v. Grimes*, 163 Or App 340, 986 P2d 1290 (1999). Similarly, whether a defendant has been denied due process of law under the Fourteenth Amendment is reviewed for errors of law. *See State v. Weller*, 241 Or App 690, 250 P3d 979 (2011). We begin, as is proper, with the state constitutional claim. *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (considering state constitutional claims before federal claims); *Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981) (same).

Article I, section 21, states that "[n]o *ex post facto* law * * * shall ever be passed." The Supreme Court has historically interpreted Article I, section 21, congruently with the *ex post facto* provision contained in Article I, section 10, of the United States Constitution "on the assumption that that provision's scope is similar to the scope of Article I, section 21." *State v. Cookman*, 324 Or 19, 26, 920 P2d 1086 (1996); *see also Mannelin v. DMV*, 176 Or App 9, 16, 31 P3d 438 (2001) ("The Oregon courts have concluded that the state *ex post facto* clause was intended to have the same historical scope as its federal counterpart in Article I, section 10, of the federal constitution.").

In *Cookman*, the Supreme Court, in analyzing the meaning of Article I, section 21, observed that the decision in *Calder v. Bull*, 3 US 386, 390, 1 L Ed 648 (1798), which expressed the "classic formulation of the *ex post facto* prohibition," influenced the intent of the framers of the Oregon Constitution and set out *Calder*'s four categories:

> "'1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender. All these, and similar laws, are manifestly unjust and oppressive.'"

*Cookman*, 324 Or at 30 (quoting *Calder*, 3 US at 390). Defendant argues that the change from *Turner* to *Partain* falls into the "catchall" category of *Calder*—a "similar" change in the law that is "manifestly unjust and oppressive." We disagree.

The Ex Post Facto Clause of Article I, section 10, of the United States Constitution has been held to apply to only legislative action. "[T]he Ex Post Facto Clause does not apply to judicial decision making." *Rogers v. Tennessee*, 532 US 451, 462, 121 S Ct 1693, 149 L Ed 2d 697 (2001). "As the text of the Clause makes clear, it 'is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government.'" *Id*. at 456 (quoting *Marks v. United States*, 430 US 188, 191, 97 S Ct 990, 51 L Ed 2d 260 (1977) (citation omitted)). It is undisputed that, in this case, that change from *Turner* to *Partain* came about through judicial interpretation, not direct legislative action.

We acknowledge that simply because a provision of the Oregon Constitution has historically been interpreted congruently to a similar provision in the federal constitution does not foreclose a more divergent interpretation in the future. *Cookman*, 324 at 27 n 7 ("This court also has explained that its past reliance on the Supreme Court's pronouncements when construing Oregon's law do not imply that the meaning of Oregon's law is forever fixed to the federal courts' understanding of analogous federal law." (Citation omitted.)). However, here, defendant has presented no compelling argument why the change from *Turner* to *Partain* compels an extension of Article I, section 21, jurisprudence to encompass judicial, as opposed to legislative, action.

Turning to defendant's federal constitutional argument, "a judicial alteration of a common law doctrine of criminal law violates the [due process] principle of fair warning, and hence must not be given retroactive effect, only where it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Rogers*, 532 US at 462 (quoting *Bouie v. City of Columbia*, 378

US 347, 354, 84 S Ct 1967, 12 L Ed 2d 894 (1964) (citations omitted)). As we explain, we are unpersuaded that *Partain*'s change to the *Turner* doctrine was either unexpected in defendant's case, or indefensible by reference to how the law had changed since *Turner*.

In advancing his due process argument, defendant states,

> "Defendant's 2007 decision to appeal his convictions was made at a time when the *Turner* rule was in force and he faced no risk of increased punishment following a successful appeal. *Partain* did not exist and its existence could not have been anticipated by defendant or his counsel given *Turner*'s pedigree and the absence of any clear legislative actions in response to *Turner*."

We disagree with defendant's characterization in two respects. First, defendant appears to conceptualize an appeal as a discrete point in time, fixed at the time when the notice of appeal is filed. Implicitly, defendant appears to assert that the cost-benefit calculation of the risks of appeal occurs at that point, and no other. We disagree. An appeal is a process—often a lengthy one. During the pendency of an appeal legal landscapes may shift and, accordingly, the benefits and risks of prosecuting an appeal may change. Up until the issuance of the appellate judgment, a defendant retains the power to move to dismiss his or her appeal if an undesirable risk, unforeseeable at the time of filing the notice of appeal, comes into existence.

Second, we disagree that *Partain*'s "existence could not have been anticipated." In this case, the office of attorneys handling defendant's appeal, OPDS, was the very same office that simultaneously was engaged in Supreme Court litigation where the state was questioning the continued viability of *Turner*. While the "unanticipated" prong of *Rogers* and *Bouie* is often analyzed in broader contexts—looking to the development of the law generally—in this case, regardless of whether the wider legal community might have anticipated the Supreme Court disavowing *Turner*, defendant's attorneys *actually knew* that the *Turner* doctrine might be altered, because they were the same attorneys litigating

that issue before the court at the same time as they handled defendant's case.[1]

Even if *Partain* could be construed to be unexpected in defendant's case, *Partain* was not "indefensible by reference to the law which had been expressed prior to the conduct at issue." *Bouie*, 378 US at 354 (citing Jerome Hall, *General Principles of Criminal Law* 61 (2d ed 1960)). *Partain* disavowed *Turner* based on the legislature's amendments to the relevant sentencing statutes enacted after *Turner*:

> "We have suggested that the *Turner* decision rested on an unexamined elaboration on the right of appeal guaranteed by ORS 138.020—*i.e.*, that the right of appeal necessarily includes the right to have the length of any resentence limited to the sentence originally imposed. We have assumed, without actually deciding, that that reading of ORS 138.020 had some basis in the law when *Turner* was decided. But, based on changes in the law pertaining to criminal sentencing and criminal appeals since *Turner* was decided, as well as the legislature's rejection of the 'rule of lenity,' it now is clear that the *Turner* court's expansive reading of the right to appeal in ORS 138.020 no longer is viable, if it ever was. Put differently: The legal landscape surrounding the right of criminal defendants to appeal has changed in a way that undermines the essential premise for the holding in *Turner*."

*Partain*, 349 Or at 21-22. Thus, far from being "indefensible" in relation to the law prior, *Partain* explains that legislative enactments had rendered *Turner* indefensible.

Accordingly, the imposition of the sentence after *Worth II* neither violated the Ex Post Facto Clause of Article I, section 21, of the Oregon Constitution, nor the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

Affirmed.

---

[1] Petitioner has not alleged that his appellate attorneys were ineffective in failing to communicate to him their knowledge that the potential risks of appeal had changed once the continued viability of *Turner* became a subject of Oregon Supreme Court litigation.