Argued and submitted December 23, 2014, remanded for resentencing, otherwise affirmed December 9, 2015

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DANIEL STEVEN ZOLOTOFF,
*Defendant-Appellant.*

Marion County Circuit Court
08C51862; A153858

365 P3d 131

Daniel C. Bennett, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Kathleen Cegla, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

**HADLOCK, J.**

This case relates to the scope of authority that a trial court has when it regains jurisdiction after this court remands a criminal case for resentencing. As we explain below, when this court orders a "remand for resentencing" without expressly limiting the scope of remand, the trial court *must* resentence the defendant on each surviving count of conviction, and it *may* change the terms of the defendant's sentences, so long as the newly imposed sentences are lawful. In an earlier appeal in this case, in which defendant was convicted of multiple crimes, we reversed and remanded for merger of the guilty verdicts on two counts; we also remanded for resentencing. On remand, the trial court reasoned that it was authorized only to merge the two guilty verdicts and not to otherwise resentence defendant. We conclude that the trial court's reasoning was plainly erroneous and led the court to improperly refuse to consider whether it should change the terms of defendant's sentences. We exercise our discretion to correct that plain error and, therefore, remand for another resentencing hearing.

The pertinent facts are mostly procedural and, for our purposes, are undisputed. At his criminal trial, defendant was convicted of four out of five crimes charged: attempted first-degree assault (Count 2), first-degree burglary (Count 3), unlawful use of a weapon (Count 4), and menacing (Count 5). *State v. Zolotoff,* 250 Or App 376, 377, 280 P3d 396, *rev den,* 352 Or 666 (2012). The trial court imposed an upward-departure sentence on Count 3 of 130 months of incarceration and 36 months of post-prison supervision. The court imposed a 30-month prison sentence on Count 2 and a shorter prison sentence on Count 4, both to run concurrently with each other and with the sentence on Count 3. On Counts 2, 3, and 4, the court ordered that defendant could not "be considered for various leave, release or program options pursuant to SB 936," based on findings made on the record.[1] Finally, the court imposed a consecutive 300-day jail sentence on Count 5.

---

[1] "SB 936" is a reference "to the early-release and sentence-reduction programs authorized by Senate Bill (SB) 936 (1997)." *State v. Goodenough,* 264 Or App 211, 213 n 3, 331 P3d 1076, *rev den,* 356 Or 400 (2014). Among other things, SB 936 (1997) enacted ORS 137.750(1), which provides:

In his first appeal, defendant argued that he was entitled to a judgment of acquittal on one of the counts; we rejected that argument without discussion. *Id.* Defendant also argued that the trial court erred in failing to merge the guilty verdicts on Counts 2 and 4. The state conceded that merger was required in light of how the two pertinent crimes were charged in this case. We agreed and, in our previous opinion, held that the trial court erred when it failed to merge the guilty verdicts on Counts 2 and 4. Accordingly, we reversed and remanded those two counts for entry of a single conviction for attempted first-degree assault; we also remanded for resentencing. *Id.* at 377-78. Our "tag line" stated, in pertinent part: "[J]udgment reversed and remanded with instructions to merge conviction for unlawful use of a weapon (Count 4) into conviction for attempted assault in the first degree (Count 2) and for resentencing, otherwise affirmed[.]" *Id.* at 378.

As a result of our decision, the trial court scheduled a resentencing hearing, which defendant attended in person. Just before the hearing, the prosecutor and defendant's attorney met to discuss a draft version of a new judgment. Because the discussion that followed is important to our disposition in this case, we quote the transcript of the resentencing hearing at length. A review of that transcript reveals that the trial court (and perhaps the lawyers) plainly believed—incorrectly—that the court lacked authority to reconsider the terms of defendant's sentences on the surviving counts of conviction:

"THE COURT: *** This is State v. Zolotoff, 08C-51862, and the time set for a resentencing as a result of the appellate decision; is that everybody's understanding?

"[PROSECUTOR]: Yes, Your Honor.

---

"When a court sentences a defendant to a term of incarceration upon conviction of a crime, the court shall order on the record in open court as part of the sentence imposed that the defendant may be considered by the executing or releasing authority for any form of temporary leave from custody, reduction in sentence, work release or program of conditional or supervised release authorized by law for which the defendant is otherwise eligible at the time of sentencing, unless the court finds on the record in open court substantial and compelling reasons to order that the defendant not be considered for such leave, release or program."

"THE COURT: Okay. Is that your understanding, Mr. Zolotoff?

"THE DEFENDANT: Yes.

"THE COURT: Okay. And *it's just on Count 2; is that correct?*

"[PROSECUTOR]: Yes, Your Honor. And it should be in the file. [Defendant's counsel] did have an opportunity to review what I believe would need to be marked as the second amended judgment.

"THE COURT: Okay. And, [defense counsel], have you had an opportunity to review this proposed judgment that the State has prepared and compare it to the decision of the Court of Appeals?

"[DEFENSE COUNSEL]: I have, Your Honor.

"THE COURT: And what's your position?

"[DEFENSE COUNSEL]: I think that's correct. I think that's following the Court of Appeals order to merge that count.

"THE COURT: Okay. And it appeared to me when I read the judgment that basically they corrected it in the Court of Appeals. *They didn't send it back to me to do all kinds of fancy were [sic] creative things, they just said fix it,* but it is a resentencing so, Mr. Zolotoff, you have the right to be here and here you are."

(Emphasis added.)

The court then asked defendant if he had anything to say. Defendant responded,

"Just that I'm asking for leniency on the sentencing. I've been good. I realize that I've done some wrong along the way. I think some of it was perhaps on the fact I was on antidepressants the time, as I understand with counseling that I have imprisoned now Prozac has a bad effect some people and I might have fallen victim to that. Anyway, I'm at the mercy of the Court and I hope that we can get a fair sentencing. I would like to see a major reduction in to get on with my life. I've got four years to go to retirement age and I'm not getting any younger and I'd like to be able to get out and be able to do some good in the world again."

The court responded to defendant's request by stating, "This was reversed just for the purposes of entering this judgment." The court then asked if the new judgment would reduce defendant's sentence in any way. Defendant's counsel replied, "It does not, Your Honor."

The court then told defendant,

"Well, you know, Mr. Zolotoff, I think that the only way that it would really likely be able to reduce your sentence in any way is if there was an authorization for you to the considered for earned good time. And, you know, as, you know, obviously a very contested trial, you were acquitted on one count and the sentencing was likewise quite contested."

The court and the two attorneys then discussed how to properly structure the judgment. Specifically, the court wondered whether the judgment should simply vacate the conviction on Count 4 or whether the judgment should state that Count 4 merges with Count 2. After that discussion, the court returned to the issue of defendant's request for a reduced sentence:

"[THE COURT:] So anyway, we'll try to get it all straightened out. But I would say, Mr. Zolotoff, it would require a resentencing, that, you know, people write to us all the time, that if you wrote a letter supported by your counselor there at the institution, with some records that showed how well you're doing and if the District Attorney stipulated to it, it might be that a judgment that authorized some good time. I don't want you to hope too much, but that's the only way that we could do it is really if the District Attorney stipulated to it.

"THE DEFENDANT: That's my only course of action is through a counselor rather than an appointed attorney in this case?

"THE COURT: Well, it's not because—really what it is is it's just throwing yourself on the mercy of the DA and the Court to change the original judgment."

Defendant informed the court that he believed he was eligible for a reduction in his incarceration time of up to 30 percent. The following exchange then occurred:

"THE COURT:  *** Well, I thought that you had no SB 936 is what I was looking at. That's why I was saying that about writing a letter.

"THE DEFENDANT:  I have it in writing from my counselor that I'm eligible for the 30 percent.

"THE COURT:  Well, you wouldn't be if the Court ordered you're not eligible for it.

"THE DEFENDANT:  Oh, okay. Perhaps we can figure that one out too then.

"THE COURT:  Yeah. So at least on Count 2 and Count 3, they are marked cannot be released pursuant to SB 936, or get good time.

"THE DEFENDANT:  *Perhaps we can resolve that at this time too then.*

"THE COURT:  *Not today. That's what I'm saying is that because that's not why it's back for resentencing,* but, you know, nobody had noticed that that would be something, and that's not why it was reversed."

(Emphases added.)

During a subsequent recess, the court and attorneys apparently continued to discuss how to draft an appropriate judgment. After they arrived at a decision about how to best do so, the court went back on the record.

"THE COURT:  For the record in State v. Zolotoff, 08C-51862. Mr. Zolotoff, I thought I wasn't going to be seeing you for a while, but—

"THE DEFENDANT:  I didn't think so either.

"THE COURT:  Well, we checked into things and I don't know if [your attorney] has had a chance to tell you what the deal is, but we did go ahead and do an order vacating the judgment in Count 4, and one of the things that the Court of Appeals does, even though they are only sending it back for me to sentence on one, the Department of Corrections interprets that as everything is gone. There are no judgments left. So then we need to enter judgments in each of the counts, so Count 2, 3 and 5; is that right?

"[PROSECUTOR]:  Yes, Your Honor.

"THE COURT: Okay. All right. So, [defense counsel], is there anything you want to tell me before I proceed to sentencing?

"[DEFENSE COUNSEL]: Well, Your Honor, *I think Mr. Zolotoff already made argument or request to the Court to consider reducing some of these sentences significantly. We would renew that and ask the Court to do that.* I am a little concerned. Count 5 actually is a Menacing count and on that the Court originally sentenced to 300 days with credit for time served, but it was consecutive to Count 3.

"Now, it's my understanding, not having done the case, but it's my understanding that that 300 days was served at the time of the sentence, so it would seem to me it might be a little cleaner just to change that to indicate that that time is concurrent. I don't think it would make any difference in the time if the 300 days were concurrent. There would be no confusion as to holding that as a consecutive sentence to the primary.

"THE COURT: I think though if we did it concurrent, what would happen is that they would recalculate the DOC sentences starting at the time he initially went into custody. So I think that it's probably more appropriate that it simply say that the defendant served all of this amount of time before October, that the Court believes this is fully served, or something like that. Does that make sense?

"[PROSECUTOR]: Your Honor, I actually spoke—I was the one who spoke with the DOC people and their legal department, and what they indicated to me was, is the judgments that are being entered today, it's just kind of procedural, that he would still be getting credit for everything that he's done up until today, which includes the fact that he did a 300-day consecutive sentence. So none of that will change, and that the only difference that they're looking at is that Count 4 merged to 2, which again, that was concurrent, so it still is not going to affect any of the time he served and has received credit for up to today.

"THE COURT: Okay. All right. Anything further, [defense counsel]?

"[DEFENSE COUNSEL]: No, Your Honor.

"THE COURT: Mr. Zolotoff, please stand. Is there anything further you want to tell me before I proceed?

"THE DEFENDANT: I'm just happy that I stuck around long enough to hear the outcome of today. I was worried about not getting shipped back in time.

"THE COURT: Well, you know, of course you aren't in control of all of that. Okay. *And I believe, based on the whole legal process, that the only appropriate sentence to impose is that which was previously imposed that wasn't reversed, and that it is just procedural.* And, frankly, I believe the Department of Corrections is wrong in their interpretation, but there's no way that I have any power or control to convince them otherwise.

"So, with that, I will impose the same sentence that I did previously but for, as we already did with regard to Counts 2 and Counts 4, we added on Count 2 that Count 4 merges into Count 2, and then what we did was we did a separate order vacating the judgment in Count 4 because it did merge, and the remaining sentences will look exactly as they did before. So then will we nunc pro tunc them again?

"[PROSECUTOR]: Yes, Your Honor, I did, just so it was very clear that you were resentencing him today, but that it dates back to the original sentencing.

"THE COURT: All right."

(Emphases added.)

The trial court issued an amended judgment after the hearing. Other than merging Count 4 with Count 2, and eliminating what had been the concurrent sentence on Count 4, that judgment imposed a sentence that was identical to the sentence imposed in the original judgment. Among other things, both judgments imposed an upward durational departure sentence on Count 3 and denied defendant consideration for various early leave and release programs on Count 2 and Count 3. The overall length of defendant's sentence was also the same.

Defendant raises three assignments of error on appeal. First, he argues that the trial court failed to hold an "actual resentencing hearing," because the trial court "took the position that its role was limited to merging defendant's convictions and then reinstating the prior sentence." Defendant argues that his "repeated efforts to address various aspects of his sentence" fulfilled "the purposes of

preservation" with respect to that argument. In the alternative, defendant asserts that his first assignment of error establishes plain error, and he asks us to exercise our discretion to review it. In his second assignment of error, defendant makes a concededly unpreserved argument that the trial court erred by denying him "earned time" on Count 2 and Count 3, because the court did not find "substantial and compelling reasons to order that the defendant not be considered for such leave, release or program," as ORS 137.750(1) requires. Finally, defendant makes an argument, also unpreserved, that the trial court erred when it imposed a departure sentence on Count 3 because it did not find "substantial and compelling reasons justifying a deviation from the presumptive sentence." ORS 137.671(1).

We begin by discussing what a trial court must do, and what the court may do, when it regains jurisdiction following an appellate court's remand for resentencing in a felony case. ORS 138.222(5) supplies the starting point for our analysis. It provides:

> "(a)   * * * If the appellate court determines that the sentencing court, in imposing a sentence in the case, committed an error that requires resentencing, the appellate court shall remand the entire case for resentencing. The sentencing court may impose a new sentence for any conviction in the remanded case.

> "(b)   If the appellate court, in a case involving multiple counts of which at least one is a felony, reverses the judgment of conviction on any count and affirms other counts, the appellate court shall remand the case to the trial court for resentencing on the affirmed count or counts."

ORS 138.222(5). The Supreme Court has interpreted ORS 138.222(5) to mean that as long as "there remain options that the trial court permissibly could adopt on resentencing," the proper disposition of a case is to "reverse the sentence of the trial court and remand the entire case to that court for resentencing." *State v. Edson*, 329 Or 127, 139, 985 P2d 1253 (1999).

The "entire case" requirement means that, where an appellate court reverses one conviction of a multiple-conviction judgment, all of a defendant's convictions must

be remanded for resentencing. *See State v. Link*, 260 Or App 211, 217, 317 P3d 298 (2013). The legislature's motive behind creating that requirement was to "safeguard the integrity of the trial court's sentencing *package.*" *State v. Hagan*, 140 Or App 454, 457 n 4, 916 P2d 317 (1996) (internal quotation marks omitted; emphasis added). Thus, when an appellate court's decision affects any component of that package, ORS 138.222(5) affords a sentencing court the opportunity to restructure its sentence in light of that decision. Given the complexity of felony sentencing, the same principle applies when an appellate court holds that a trial court erred by failing to merge multiple guilty verdicts and the appellate court therefore remands for merger and resentencing. *State v. Rodvelt*, 187 Or App 128, 132, 66 P3d 577, *rev den*, 336 Or 17 (2003) (upon reversing for failure to merge two guilty verdicts, holding that resentencing was required under ORS 138.222(5) "because felony sentencing under the guidelines is complex, and the way that one conviction is sentenced affects how the remaining convictions are classified on the sentencing guidelines grid"); *see State v. Sanders*, 189 Or App 107, 111-12, 74 P3d 1105 (2003) (following *Rodvelt*).

Thus, under ORS 138.222(5), when an appellate court's decision affects part of a felony sentencing package— even by doing nothing more than requiring merger of two guilty verdicts—resentencing on *all* convictions that form part of that package is required on remand. That much is mandatory; a trial court has no discretion not to resentence on each conviction. *Link*, 260 Or App at 217 ("a remand for resentencing under ORS 138.222(5)(b) does not make a resentencing proceeding *optional* after some of the defendant's convictions have been reversed") (emphasis in original); *State v. Hollingquest*, 241 Or App 1, 6, 250 P3d 336 (2011) (after the Court of Appeals "remanded for resentencing pursuant to ORS 138.222(5)(a), the entire case was before the trial court for resentencing—that is, for imposition of new sentences").

The trial court retains wide discretion, however, to craft the sentence that it deems appropriate upon resentencing. In fact, the only limit to a court's discretion is that it cannot impose a sentence that, based on the law as it exists at the time of the resentencing, is legally impermissible.

*Hollingquest*, 241 Or App at 7-8. "Put differently: the court may impose the same sentence that it previously imposed—if such a sentence is legally permissible—or it may impose a different sentence—if a different sentence is legally permissible." *Id.* at 8; *see also State v. Partain*, 349 Or 10, 19, 239 P3d 232 (2010) (under ORS 138.222(5), after remand, the trial court may "impose different sentences on any and all counts—even those not affected by the identified error").

Because the trial court has authority to alter the previously imposed sentences, we have held that "the defendant is entitled to present evidence and argument pertaining to the resentencing proceeding." *Link*, 260 Or App at 217. That is, the resentencing proceeding presents the defendant with "an *opportunity* to offer evidence and argument" in an attempt to persuade the trial court to change "its previous penalty-phase determinations." *Id.* at 217 n 3 (emphasis added); *see Hollingquest*, 241 Or App at 6 (at resentencing, "the trial court had the authority to consider any and all arguments that defendant might choose to make concerning the constitutionality of the sentence that the court was being asked to impose"). The defendant can, however, waive that opportunity; it is up to the defendant "to identify the pertinent issues" that he or she "want[s] the sentencing court to address after a case is remanded for resentencing." *Hollingquest*, 241 Or App at 7. In addition, the defendant can waive the opportunity to be present at any resentencing proceeding. *State v. Jacobs*, 200 Or App 665, 670, 117 P3d 290 (2005) (observing that a defendant may waive the right to be present at sentencing).

Defendant's entitlement to present evidence and argument does not mean, however, that the original sentencing proceeding must be viewed as a nullity. To the contrary, we have held that a resentencing court may rely, if it wishes, on findings that were properly made during the original sentencing hearing. That principle necessarily forms the basis for our decision in *State v. Hylton*, 230 Or App 525, 216 P3d 899, *rev den*, 347 Or 349 (2009). In that case, the defendant argued that the trial court erred when, during the resentencing hearing that followed a remand from an appellate court, it imposed upward departure sentences without empanelling a jury to determine the facts on which those departure

sentences were based. *Id.* at 528. The defendant's argument relied in part on *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), in which the United States Supreme Court concluded that the Sixth Amendment to the United States Constitution requires that, before a trial court may rely on facts to increase a sentence beyond a prescribed statutory minimum, those facts either must be admitted by the defendant or found by a jury.

We reasoned, however, that the trial court in *Hylton* was not required to empanel a jury during the resentencing hearing, even though it had authority to do so under ORS 136.792(1), because the jury at the defendant's original trial had found facts that would support upward departure sentences. We concluded, "where a defendant previously has been afforded [the right to jury trial on sentence enhancement facts] and the case is remanded for resentencing, a trial court has discretion under ORS 136.792 * * * not to impanel a new jury, but instead to rely on findings made by the original jury in the case." *Hylton*, 230 Or App at 530. Thus, *Hylton* stands for the proposition that a resentencing court does not need to make the type of findings required to justify its sentence if those findings were properly made during the previous sentencing proceeding. Conversely, if the findings were made in violation of statutory or constitutional principles at the original sentencing hearing, then any findings necessary to the resentencing court's determinations must be made anew at resentencing, in accordance with the law (again, absent a valid waiver by the defendant). *Hollingquest*, 241 Or App at 9.

With that background in mind, we return to defendant's assignments of error in this case. In his first assignment of error, defendant argues that the resentencing court failed to hold "an actual resentencing hearing" because the court erroneously believed that its authority on remand was limited to merging Count 2 and Count 4.

Defendant did not preserve that claim of error for appellate review. To preserve an argument for appeal, a party must "provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if

correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). In this case, the trial court began the resentencing proceeding by asserting, erroneously, that this court had only remanded the case for the trial court to fix the merger error and had not remanded the case for the court "to do all kinds of fancy [or] creative things." Defendant did not challenge the trial court's stated understanding of its authority on remand. Although both defendant and his attorney later asked the court to consider reducing some of defendant's sentences, neither explained to the resentencing court that it had authority to do so. And when the trial court repeated its mistaken understanding about the scope of its authority following this court's remand, nobody alerted the court to its error. Under the circumstances, we do not believe that defendant "fairly apprised all parties of the argument" in a way that gave the trial court "the opportunity to address the matter," as our preservation principles require. *Hagler v. Coastal Farm Holdings, Inc.*, 354 Or 132, 146-47, 309 P3d 1073 (2013).[2]

We also conclude, however, that the resentencing court plainly misunderstood the scope of its authority on resentencing, which led the court to improperly refuse to consider defendant's requests that it alter the terms of his sentences.

A trial court's error is "plain" if:

"(1) the error is one of law, (2) the error is obvious, not reasonably in dispute, and (3) the error appears on the face of the record, so that we need not go outside the record to identify the error or choose between competing inferences, and the facts constituting the error are irrefutable."

*State v. Corkill*, 262 Or App 543, 551, 325 P3d 796, *rev den*, 355 Or 751 (2014) (internal quotation marks and citation omitted).

---

[2] The state also argues that defendant invited the error in this case because his attorney "affirmatively agreed with the court and the prosecutor that the only reason for the remand was to fix the merger problem." We view defense counsel's comments differently. Defendant's attorney did agree that the proposed judgment was "following the Court of Appeals order to merge that count," but he never stated affirmatively that the court lacked authority to change other portions of the judgment; to the contrary, he echoed defendant's plea for a reduction to his sentence.

Here, the error is one of law that is "not reasonably in dispute"; we have repeatedly held that, after a case is remanded for resentencing, the resentencing court has broad authority to, as the Supreme Court has put it, "impose different sentences on any and all counts—even those not affected by the identified error." *Partain*, 349 Or at 19. Moreover, we can identify the error without going outside the record or selecting among competing inferences; it is clear from the resentencing transcript that the court believed that the case had been remanded solely so that the guilty verdicts on Count 2 and Count 4 could be merged. On that basis, the court refused to consider defendant's request for a more lenient sentence and informed defendant that he would remain ineligible for sentencing reductions.

We also conclude that we should exercise our discretion to correct the error by remanding this case to the court so that defendant will have an "opportunity to offer evidence and argument" if he wishes to attempt to persuade the trial court to change the previous sentencing determinations. *Link*, 260 Or App at 217 n 3. In considering whether to address an unpreserved claim of error, we take into account many factors, including:

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991).

Here, the factors favor the exercise of our discretion. Because the trial court misconceived the scope of its authority, defendant was deprived of an opportunity to advocate for a meaningful change to the terms of his sentence. We view that error as grave and the harm to defendant's interests as significant. Moreover, although defendant did not argue to the trial court that it misunderstood the scope of its authority on remand, the trial court was aware that the Department of Corrections took the position that the court

needed to resentence defendant on each of his convictions (as we have explained, the department's view was correct), and the court expressed its disagreement with that position. Thus, "the policies behind the general rule requiring preservation of error have been served in the case in another way." *Id.* In addition, this is not a case in which it is clear that the trial court either would be required to impose the same sentence on remand (which could occur in a case in which only one sentence was legally permissible) or almost certainly would exercise its discretion to do so.

For all of those reasons, we conclude that judgment of the resentencing court should be reversed and the case remanded for another resentencing proceeding at which defendant will have an opportunity to present evidence and argument regarding what he views as an appropriate and lawful sentence on each of the counts of conviction. *Link*, 260 Or App at 217; *Partain*, 349 Or at 19. Our remand for resentencing obviates the need for us to address defendant's remaining assignments of error, in which he challenges aspects of his sentences on Counts 2 and 3.

Remanded for resentencing; otherwise affirmed.