Argued and submitted November 27, 2013, reversed and remanded
January 22, 2015

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## KENNETH ROBERT LEE,
*Defendant-Appellant.*

Lane County Circuit Court
211122942; A150812

342 P3d 1095

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Tiffany Keast, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Hadlock, Judge, and Wollheim, Senior Judge.

DUNCAN, P. J.

**DUNCAN, P. J.**

In this criminal case, defendant appeals the trial court's judgment convicting him of one count of criminal mischief in the third degree as defined by ORS 164.345(1). The charge was based on an allegation that, with the intent to cause substantial inconvenience to another person, defendant knowingly tampered with the person's property and, when he did, he had neither the right to do so nor reasonable ground for believing that he had such a right. On appeal, defendant contends that the trial court erroneously instructed the jury on the meaning of "tamper." The trial court instructed the jury that "[t]amper requires conduct that alters, rearranges, or changes property." Defendant argues, as he did in the trial court, that the instruction is incomplete. According to defendant, in order for a person to tamper with another's property, the person must alter, rearrange, or change the property in a way that adversely affects the property or its use. As explained below, based on the text, context, and legislative history of ORS 164.345(1), we agree with defendant and, therefore, we conclude that the trial court erred in instructing the jury. We further conclude that the error was not harmless. Accordingly, we reverse and remand.

To frame the legal issue before us, we begin with a brief statement of the facts and the procedural history of the case. The state charged defendant with third-degree criminal mischief for violating ORS 164.345(1), which provides:

> "A person commits the crime of criminal mischief in the third degree if, with intent to cause substantial inconvenience to the owner or to another person, and having no right to do so nor reasonable ground to believe that the person has such right, the person tampers or interferes with property of another."

Under ORS 164.345(1), a person can commit third-degree criminal mischief by tampering or interfering with another person's property. Here, the state charged defendant with knowingly tampering with another person's property. At trial, the state's evidence was that, upon discovering an SUV in his parking spot, defendant chained the SUV to his truck and towed the SUV about 20 feet, causing damage

to the SUV's bumper. Defendant admitted towing the SUV, but contended that he did not intend to damage it.

When discussing jury instructions at trial, the parties disputed the meaning of "tamper." Relying on *State v. Schoen*, 348 Or 207, 228 P3d 1207 (2010), the state asked the trial court to instruct the jury that "tampering is defined as conduct that alters, rearranges, or changes property." Also relying on *Schoen*, defendant objected, arguing that the state's instruction was incomplete because "some kind of adverse effect on the property or its use must be shown." As mentioned, the trial court instructed the jury by stating, "[t]amper requires conduct that alters, rearranges, or changes property." The court's instruction is a quote from *Schoen*, in which, as discussed below, the Supreme Court held that "tamper" requires an effect on property or its use, but did not have occasion to address, and did not address, whether the effect must be adverse. Defendant took exception to the instruction on the ground that it did not include any language to indicate that the required alteration, rearrangement, or change must have an adverse effect on the property or its use.[1]

A jury found defendant guilty, and this appeal followed. On appeal, the parties renew their arguments regarding the meaning of "tamper" and the implications of *Schoen*.

Whether a jury instruction is a correct statement of law is a question of law. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). When, as here, the correctness of an instruction depends on the interpretation of a statutory term, we employ the interpretive method prescribed by *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), to determine the legislature's intended meaning of the term. We look to the text and context of the statute, as well as any pertinent legislative history. *Gaines*, 346 Or at 171-72. The Supreme Court undertook such an analysis of the term "tamper," as used in ORS 164.345(1), in *Schoen*.

---

[1] Defendant wanted the jury instructed that "tamper" requires conduct that has an adverse effect on property or its use because the state charged defendant with knowingly tampering with the SUV and defendant's defense theory was that he had not knowingly caused an adverse effect on the SUV or its use.

In *Schoen*, as in this case, the defendant was charged with third-degree criminal mischief for tampering with the property of another. At trial, the state presented evidence that, after being placed in the back seat of a police car, the defendant kicked the car's door a number of times. But the state did not present any evidence that "the door was damaged or otherwise altered, either in function or appearance, by defendant's acts." 348 Or at 209. The defendant made a motion for a judgment of acquittal, arguing that the state's evidence was insufficient to support a finding that he had "tampered" with the property of another. The trial court denied the motion, a jury convicted the defendant, and the defendant appealed. *Id.* at 209-10.

On review, the question before the Supreme Court was "whether a reasonable jury could find that the defendant 'tamper[ed] *** with property of another,' as that phrase is used in ORS 164.345(1)." *Id.* at 213. To answer that question, the Supreme Court had to determine whether "'tampering,' for purposes of ORS 164.345(1), can be established even without a showing that the property or its use was 'affected' by the defendant's conduct[.]" *Id.* at 214. To make that determination, the court examined the text, context, and legislative history of ORS 164.345(1).

First, the *Schoen* court noted that the criminal code does not define "tamper" for the purposes of ORS 164.345(1). Then, because "tamper" is a "word of common usage," the court turned to the dictionary definition, which provides, in pertinent part, that "tamper" means "to interfere so as to weaken or change for the worse." *Webster's Third New Int'l Dictionary* 2336 (unabridged ed 2002); *see State v. Briney,* 345 Or 505, 511, 200 P3d 550 (2008) (courts are to give words of common usage their plain, ordinary meaning). The court also noted that "tamper" is synonymous with "meddle," and the dictionary definition of "meddle" provides that "'TAMPER suggests unwarranted alteration or change, ill-advised readjustment, meddlesome experimentation, or improper influence.'" *Schoen,* 348 Or at 213 (quoting *Webster's* at 1401). Therefore, the court concluded, "'tampering' with property would seem to require some improper alteration, change or 'readjustment' of the property." 348 Or at 213.

Then, the *Schoen* court looked to the legislative history of ORS 164.345(1). It observed that the criminal mischief statutes were enacted in 1971 as part of the Oregon criminal code and were "intended to replace the statutes that 'prohibt[ed] "interference" or "tampering" with certain classes of property.'" *Id.* at 214 (quoting Commentary to Criminal Law Revisions Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 145-147, 153 (July 1970)). The statutes to be replaced included statutes that "did not prohibit mere unauthorized 'contact' with physical property, but rather conduct that affected the property or its use," and "used the words 'tamper' and 'interfere' along with other verbs that suggest that some kind of adverse effect on the property or its use must be shown." *Id.* at 214. Based on the commentary to the criminal code and the nature of the statutes that the criminal mischief statutes were intended to replace, the *Schoen* court concluded that the criminal mischief statutes were intended to "prohibit the same conduct as the earlier statutes" and that "tamper" was intended to "carry forward the concept of requiring some improper alteration of the property[.]" *Id.*

Notably, the *Schoen* court considered and rejected the state's argument that the legislature intended the term "tamper" to cover all conduct that a person engages in with respect to another's property that is performed with an intent to cause substantial inconvenience to the owner of the property. *Id.* at 215. The court explained that

"[t]he legislature set out a specific *mens rea* in ORS 164.345(1)—the intent to cause substantial inconvenience. But the statute does not simply criminalize all acts done with that intent. Rather, it also sets out a specific *actus reus* for third-degree criminal mischief: 'tamper[ing] or interfer[ing] with property or another.'"

*Id.* Referring back to its review of the text, context, and legislative history of ORS 164.345(1), the court concluded that the legislature did not intend the term "tamper" to include all conduct undertaken with the intent to cause substantial inconvenience. *Id.* at 215. According to the court, the phrase "tampers *** with property was not intended to sweep so broadly." *Id.* Noting that "'tamper' ordinarily refers to a change or alteration—ordinarily for the worse—in some

thing (tangible or intangible)[,]" the court concluded that "tampering, as used in ORS 164.345(1), requires conduct that alters, rearranges, or changes property." *Id.* at 216.

To illustrate the meaning of "tampering," the *Schoen* court discussed several hypothetical examples. *Id.* at 216. The court stated:

"Throwing a switch on a train track that could change the path of a train or opening a gate that blocks access on a forest service road is conduct that alters, rearranges, or changes property, and constitutes 'tampering' with property. If done with the intent to cause substantial inconvenience, it constitutes third-degree criminal mischief. Similarly, mixing up library books and reshelving them out of order is an alteration and rearrangement of property and constitutes 'tampering with property.'"

*Id.*

Of particular relevance to the case before us, the *Schoen* court explained that

"[w]hat constitutes tampering with property for the purposes of ORS 164.345(1) may depend on the nature of the property: merely entering a 'clean room' at a manufacturing facility for silicon wafers or touching a valuable painting with one's finger might constitute tampering, while the same conduct with respect to other property would not."

*Id.* The hypothetical examples discussed by the *Schoen* court suggest that, in order for conduct to constitute "tampering" for the purposes of ORS 164.345(1), it must not only have an effect on the property, it must have an adverse effect on the property or its use, and whether it has such an effect will depend on the nature of the property itself.

The *Schoen* court then applied its rule—"that the word 'tampering,' as used in ORS 164.345(1), requires conduct that alters, rearranges, or changes property"—to the facts of the case before it, and concluded that, because the state had failed to introduce any evidence that the defendant's kicks to the police car door "altered, rearranged, or had any effect whatever on the car," it had failed to produce any evidence that the defendant had tampered with the car, and, therefore, the trial court erred in denying the

defendant's motion for a judgment of acquittal on the third-degree criminal mischief charge. *Id.* at 217.

Given the issue before it, the *Schoen* court held only that, in order for conduct to constitute "tampering" for the purposes of the third-degree criminal mischief statute, it must have an effect on the property or its use, *i.e.*, "Some showing \* \* \* of an appreciable physical change or rearrangement of property." *Id.* The court was not presented with the issue in this case, which is whether the effect must be adverse. However, the *Schoen* court's analysis of the text, context, and legislative history of the statute leads us to the conclusion that, as defendant argues, the effect must be adverse.

As described above, the applicable dictionary definition of "tamper" is "to interfere so as to weaken or change *for the worse.*" *Webster's* at 2336 (emphasis added). And "tamper" is a synonym for "meddle," the definition of which specifies that "TAMPER suggests *unwarranted* alteration or change, *ill-advised* readjustment, *meddlesome* experimentation, or *improper* influence." *Webster's* at 1401 (emphasis added). Thus, the definition of "tamper," the fact that it is synonymous with "meddle," and the fact that the definition of "meddle" specifies that tampering has a negative aspect to it, all indicate that tampering requires an adverse effect. The action itself, separate from the mental state accompanying it, must be improper; it must have an adverse effect on either the property itself or its use. *See Schoen*, 348 Or at 215 (ORS 164.345(2) "does not simply criminalize all acts done with [the intent to cause substantial inconvenience]").

Our conclusion is supported by the *Schoen* court's discussion of hypothetical examples of third-degree criminal mischief. As set out above, the court observed "*mixing up* library books and reshelving them *out of order* is an alteration and rearrangement of property and constitutes 'tampering' with property." *Id.* at 216 (emphasis added). Notably, in that example, the court described an act that has an adverse effect on the library's collection of books. If, as the state suggests, tampering does not require an adverse effect on property or its use, then, as defendant argues "*sorting* library books and reshelving them *in order* would also

qualify as tampering[.]" But the text, context, and legislative history weigh against a conclusion that such an act constitutes "tampering" and, therefore, could constitute the *actus reus* of third-degree criminal mischief.

Like rearranging library books out of order, both throwing a train switch and opening a gate that blocks access to forest property involve changes to property that adversely affect its use. They involve moving property from a position where it would serve a particular purpose to a different position that adversely affects its ability to achieve that purpose.

In addition, the court observed that whether conduct constitutes tampering depends on the nature of the property; thus, an action that has an effect on property may not constitute tampering if the effect cannot be said to be adverse. For example, entering a room (and thereby introducing dust) may constitute tampering if the room is a "clean room" at a silicon wafer manufacturing facility, but not if the room is the public lobby of the same facility.

In sum, in keeping with the text, context, and legislative history of the term tampering, and the Supreme Court's interpretation of the term in *Schoen*, we conclude that, for the purposes of ORS 164.345(1), "tamper" requires conduct that alters, rearranges, or changes property in a way that has an adverse effect on the property or its use. Accordingly, we conclude that the trial court erred in refusing defendant's request that the jury be instructed that "tampering" requires an adverse effect.

Having concluded that the trial court erred in instructing the jury, we turn to the question of whether the error was harmless. Or Const, Art VIII (Amended), § 3 (a reviewing court must affirm a judgment, despite any error committed at trial, if, after considering all the matters submitted, the court is of the opinion that the judgment "was such as should have been rendered in the case").

The erroneous instruction in this case misinformed the jury about an element of the charged crime and the misinformation could have affected their analysis of whether the state had carried its burden of proving all of the elements of

the crime. Defendant's defense was that he moved the SUV, but did not intend to damage it; in other words, his defense was that he did not knowingly tamper with the SUV. The erroneous instruction allowed the jury to focus on whether defendant knowingly moved the SUV, as opposed to whether he knowingly tampered with it. Indeed, the prosecutor urged the jury to do just that; he quoted the erroneous instruction in his closing argument and contended that defendant knowingly tampered with the SUV by knowingly moving it. He argued:

"Tampering requires a conduct that alters, rearranges or changes property.

"Now, altering property means just moving it. You just move the property. That's tampering with it.

"So he knew he was moving the property."

Given that the erroneous instruction misinformed the jury about an element of the charged crime and the element related to the central disputed issue at trial, we cannot conclude that giving the instruction was a harmless error.

Reversed and remanded.