Submitted March 26, reversed October 30, 2019

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ZACHARY MICHAEL LOBUE,
*Defendant-Appellant.*

Lane County Circuit Court
17CR33498; A166198

453 P3d 929

Defendant seeks reversal of a judgment convicting him of first-degree failure to appear. ORS 162.205. He assigns error to the trial court's denial of his motion for judgment of acquittal and argues that the plain text of his release agreement did not condition his release on his personal appearance. The state responds that, while the release agreement did not explicitly use the term "personally appear," defendant's personal appearance, as opposed to appearance through counsel, was implied by the release agreement. *Held*: In criminal and civil matters, one can "appear" personally or through counsel. Under Oregon law, personal appearance, as opposed to appearance through counsel, is not statutorily required in misdemeanor cases and is only required at certain critical stages of felony cases. Thus, ORS 162.205 requires that the criminal sanction for failure to appear be based on a release agreement that specifies personal appearance. The trial court erred in denying the motion for judgment of acquittal because the release agreement in this case did not unambiguously require defendant's personal appearance and it is undisputed that defendant appeared at his hearing through counsel.

Reversed.

Charles M. Zennaché, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kyle Krohn, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Carson L. Whitehead, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

JAMES, J.

Reversed.

Lagesen, P. J., concurring.

DeVore, J., dissenting.

**JAMES, J.**

Defendant seeks reversal of a judgment convicting him of first-degree failure to appear, ORS 162.205. That statute provides, in part:

> "(1)   A person commits the crime of failure to appear in the first degree if the person knowingly fails to appear as required after:
>
> "(a)   Having by court order been released from custody or a correctional facility under a release agreement or security release upon the condition that the person will subsequently appear personally in connection with a charge against the person of having committed a felony."

Defendant argues that the plain text of the release agreement in this case did not condition his release on his *personal* appearance in court. The state responds that, while the release agreement did not explicitly use the terms "personally appear," defendant's personal appearance, as opposed to appearance through counsel, was implied by the release agreement. We agree with defendant and, accordingly, reverse.

The relevant facts are largely undisputed. On January 28, 2017, the state charged defendant with possession of a stolen motor vehicle, a Class C felony. ORS 819.300. On March 24, 2017, defendant was released from jail under a release agreement. That release agreement indicated defendant's felony charge in the caption. In the body of the agreement, it included the following language:

> "1)   Appear in court at the Lane County Circuit Courthouse in Eugene on Monday, May 01, 2017 at 2:30 p.m. and all other dates. The Lane County Circuit Courthouse address is 125 E 8th Ave, Eugene, OR 97401, Tel: (541) 682-4020.
>
> "* * * * *
>
> "5)   Maintain a mailing and/or residential address, as well as a contact telephone number. I understand that I am required to immediately give written notice in person of any changes to Pretrial Services * * *.
>
> "6)   I understand that I am required to keep in contact with the attorney of record in this matter * * *.

"7)  Obey all laws and notify this court within 5 days, in writing, if I am arrested or charged with any new crime.

"* * * * *

"9)  Call the Pretrial Services office until I am acquitted, or sentenced or the case is dismissed. * * * I understand that I must check in on assigned days even if I have court that day.

"I understand that

"I will be subject to arrest and revocation of my release if I fail to appear as required on my release agreements."

(Boldface omitted.)

On May 1, 2017, the trial court held a 35-day call hearing. Defendant's attorney was present, but defendant was not. The court issued an arrest warrant. Ultimately, the state charged defendant with felony failure to appear and a trial was held on that failure to appear charge. After the state rested, defendant moved for a judgment of acquittal. He argued that the state had to prove that the release agreement required him to appear personally and that the agreement in this case did not require him to appear personally. The state argued that the release agreement impliedly required defendant to appear in person. The court denied the motion:

"Okay. I'm going to deny your motion for a judgment of acquittal, finding that a reasonable trier of fact could find that the supervised release agreement which is worded, 'I, [defendant], promise on oath that I will appear in court at the Lane County Circuit Courthouse in Eugene on Monday, May 1st, 2017, at 2:30 p.m. and all other dates,' then listing the address, could reasonably be read and inferred to mean that he will appear in person, although the word 'subsequently appear personally' does not appear in this release agreement. That sentence, as it is commonly read and is commonly understood, could be read to mean that he will, himself, present himself personally in court."

Defendant appealed, and the parties reprise the arguments they made before the trial court. At the outset, we address the standard of review. The trial court treated this issue as a question of fact and, accordingly, applied the

typical standard for a motion for judgment of acquittal, *i.e.*, whether, viewing the evidence in the light most favorable to the state, a rational factfinder could have inferred from the evidence each of the elements of the charged offense beyond a reasonable doubt. *State v. Casey*, 346 Or 54, 56, 203 P3d 202 (2009). As we will explain, that was error. But first, it is important to put the relevant statutes at issue into proper context.

ORS 162.205(1)(a) makes it a crime to knowingly fail to appear only after "[h]aving by court order been released from custody or a correctional facility under a release agreement or security release upon the condition that the person will subsequently appear *personally* in connection with a charge." (Emphasis added.) The specific wording of the statute—requiring the release agreement to condition *personal* appearance—to justify the failure to appear charge has existed since the statute's original enactment in 1971. *See* Or Laws 1971, ch 743, § 196.

The statute's requirement of a release agreement that requires personal appearance recognizes that, in criminal cases, just as in civil cases, a party's "appearance" in a legal matter need not always be personal, but often may be accomplished through appearance through counsel. Appearance through counsel in criminal matters has been statutorily provided for in Oregon since 1955.[1] For misdemeanor crimes, the personal appearance of a defendant is never required, even at critical stages of the process including arraignment and trial. *See, e.g.*, ORS 135.030 ("When the accusatory instrument charges a crime punishable as a misdemeanor, the defendant may appear in person or by

---

[1] In the 1950s, several statutes were enacted that require a defendant's personal appearance at certain critical stages. Although many of those statutes have since been renumbered or amended, the legislature has not altered the requirement that a defendant personally appear at those critical stages and has not required a defendant to personally appear at other stages. *See former* ORS 135.110 (1955), *renumbered as* ORS 135.030 (1973) (requiring defendant to personally appear at felony arraignments); *former* ORS 135.360 (1955), *renumbered as* ORS 135.360 (1973) (requiring a defendant to personally appear for the entry of a guilty plea); ORS 136.040 *amended by* Or Laws 1973, ch 836, § 225 (requiring defendant to personally appear for felony trials); *see also* ORS 137.030 (1953) *amended by* Or Laws 1993, ch 581, § 1; Or Laws 1997, ch 827, § 1; Or Laws 2005, ch 566, § 9 (requiring defendant to personally appear at judgment for felony convictions).

counsel."). For felony crimes, the personal appearance of a defendant is statutorily required only at certain critical stages—arraignment, entry of plea, trial, and sentencing. *See, e.g.*, ORS 135.030; ORS 135.360; ORS 136.040; ORS 137.030. Except for those four specific critical stages, no statute prohibits appearance through counsel in felony cases.

In 1973, Oregon ended the practice of bail and created a new system for pretrial release. Among the pertinent release statutes enacted at that time was ORS 135.255, which provides that "[a] failure to appear as required by the release agreement shall be punishable as provided in ORS 162.195 [Failure to appear in the second degree] or 162.205 [Failure to appear in the first degree]." The statute does not offer a specific definition of "appear." A review of the legislative history surrounding the change to Oregon's pretrial release system shows no indication that the legislature sought to amend the historically understood concept of appearance or to redefine appearance in the context of a release agreement. In short, "to appear" remained a term of art, meaning appearance personally or through counsel. Only in a small handful of specifically delineated hearings in felony cases was personal appearance required.

For a statute to attach criminal penalties to conduct, "[t]he terms of a criminal statute must be sufficiently explicit to inform those who are subject to it of what conduct on their part will render them liable to its penalties." *State v. Graves*, 299 Or 189, 195, 700 P2d 244 (1985). In addition to the requirements for notice, a criminal statute must not be so vague as to allow "a judge or jury unbridled discretion to decide" what conduct to punish. *State v. Cornell/Pinnell*, 304 Or 27, 29, 741 P2d 501 (1987). "A law that gives such unbridled discretion to judges and juries offends *** the principle against standardless and unequal application of criminal laws embodied in Article I, section 20, of the Oregon Constitution." *State v. Plowman*, 314 Or 157, 161, 838 P2d 558 (1992).

Here, because Oregon's statutory scheme permits appearance through counsel even in felony cases, to satisfy the requirements of notice, and to prevent standardless and unequal application of criminal laws, ORS 162.205 must be

interpreted to attach a criminal penalty to a knowing failure to appear when the release agreement *unambiguously* requires personal appearance. Therefore, the question in this case is whether the release agreement unambiguously required defendant's personal appearance at the 35-day call hearing. That is not a question of fact, as the trial court concluded, but a question of law.

Release agreements are contracts and we interpret them, for the most part, like any other contract. "When considering a written contractual provision, the court's first inquiry is what the words of the contract say, not what the parties say about it." *Eagle Industries, Inc. v. Thompson*, 321 Or 398, 405, 900 P2d 475 (1995). "[T]o determine whether a contractual provision is ambiguous, the trial court can properly consider the text of the provision in the context of the agreement as a whole and in light of the circumstances underlying the formation of the contract." *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773, *rev den*, 341 Or 366 (2006). The meaning of an unambiguous contractual provision is a question of law. *Valenti v. Hopkins*, 324 Or 324, 331, 926 P2d 813 (1996) ("As a general rule, the construction of a contract is a question of law. Unambiguous contracts must be enforced according to their terms."); *Eagle Industries, Inc.*, 321 Or at 405 ("In the absence of an ambiguity, the court construes the words of a contract as a matter of law."). The determination whether a contractual provision is ambiguous also is a question of law. *Valenti*, 324 Or at 331-32; *Eagle Industries, Inc.*, 321 Or at 405. We are further guided by ORS 42.230, which provides:

> "In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all."

The parties agree that the plain terms of the release agreement do not specify personal appearance. According to the state, however, personal appearance can be inferred from the context of the agreement. First, the state points

to the use of the term "I" in the agreement, arguing that it denotes defendant personally. We cannot agree. As already discussed, Oregon's statutory scheme contemplates that a criminal defendant can engage an agent—his attorney—to appear on his behalf. The agreement contemplates that defendant will bear the consequences of the acts of his agent, consistent with traditional principles of agency. *See Eads v. Borman*, 351 Or 729, 736, 277 P3d 503 (2012) ("[T]he principal is bound by or otherwise responsible for the actual or apparent agent's acts * * * if the acts are within the scope of what the agent is actually or apparently authorized to do.").

Second, the state points to the provision that provides, "I understand that[:] I will be subject to arrest and revocation of my release if I fail to appear as required on my release agreement." We do not read that provision to make it unambiguously clear that defendant's personal appearance is required. Rather, we read that provision as a consequence of a breach of contract—a recognition by defendant that he will bear the consequences of a failure to appear by himself or through his agent. Should either defendant, or his attorney, fail to appear, then defendant will be in breach of the contract and the remedy will be rescission ("revocation of my release"). The arrest contemplated is not an arrest for a violation of ORS 162.205, but an arrest on the underlying charge for which defendant was originally released.

In conclusion, because the release agreement in this case did not unambiguously require defendant's personal appearance at the 35-day call hearing—a hearing of a type where no statute requires the personal appearance of a criminal defendant—and because it is undisputed that defendant appeared through counsel at that hearing, the trial court erred in denying defendant's motion for judgment of acquittal. Accordingly, defendant's conviction for violation of ORS 162.205 is reversed.

Reversed.

**LAGESEN, P. J.,** concurring.

I join the majority opinion in full but write separately to amplify why and to respond to some of the points made in the dissenting opinion.

"'The gravamen of the offense [of failure to appear] is the violation of a release or security agreement.'" *State v. Arney*, 233 Or App 148, 153-54, 225 P3d 125 (2010) (quoting *State v. Eastman*, 112 Or App 256, 258, 828 P2d 484 (1992)). More particularly, as relevant to this case, the gravamen of the offense is the violation of a release agreement containing a specific condition: "the condition that the person will subsequently appear *personally* in connection with a charge against the person of having committed a felony." ORS 162.205(1)(a) (emphasis added).

The question in this case is whether defendant's release agreement contains that specific condition of personal appearance. This is a question because the agreement does not, by its terms, state explicitly that defendant must appear "personally" in court, and because the agreement does not, by its terms, prohibit defendant from appearing through counsel. This makes the agreement ambiguous as to whether or not the appearance obligation imposed was one of *personal* appearance. In answering that question, the majority opinion effectively concludes that, to avoid potential constitutional problems, we should view defendant's release agreement through the lens of a contractual "rule of lenity" (for lack of a better description) and strictly construe it against the state, much as we used to do with criminal statutes before the legislature abolished the rule of lenity.[1]

Any other approach raises constitutional concerns, and it is appropriate for us to avoid them.

As the majority opinion ably explains, Oregon law allows for appearances through counsel in felony cases, at

_____

[1] The rule of lenity provides "that criminal statutes are strictly construed, and not construed against the accused beyond their literal and obvious meaning." *Horner v. State of Oregon*, 1 Or 267, 268 (1859). Although the legislature has displaced the rule of lenity as a tool for construing *statutes*, *State v. Partain*, 349 Or 10, 21, 239 P3d 232 (2010), I have found nothing indicating that the legislature intended to preclude the use of a similar rule of construction when construing an agreement, the violation of which the legislature has made a crime. Additionally, strictly construing an agreement against the state, when the state has made the violation of the agreement a crime, is consistent with the generally recognized principle that, in the criminal context, agreements with the government should be strictly construed against the government, given its superior bargaining power and potential due process concerns. *See, e.g.*, *State v. Rivers*, 283 Conn 713, 723-30, 931 A2d 185, 192-95 (2007) (stating principle with respect to plea and cooperation agreements, and citing other relevant cases).

least in some instances. In view of that statutory landscape, the failure of a release agreement to unambiguously specify that any appearance must be in person gives rise to a serious risk that the person released under the agreement will not have the notice needed to avoid committing a crime.

Additionally, the failure to embrace a rule requiring strict construction of the provisions of an ambiguous release agreement would give rise to a risk of differential treatment of similarly situated Oregonians charged with failure to appear. Consider two defendants released under agreements worded identically to the one at issue here. Absent a rule of strict construction, the resolution of whether an ambiguous agreement requires a defendant's personal appearance will fall to the jury, or to the court sitting as factfinder, as it did in this case and as it does in civil cases. *Milne v. Milne Construction Co.*, 207 Or App 382, 389, 142 P3d 475, *rev den*, 342 Or 253 (2006) (explaining that, when a contract is ambiguous, its meaning becomes a question of fact for the factfinder). That makes it possible, or even probable, that one defendant will be convicted and one will not, not because of any difference in their circumstances or the obligations imposed by the text of their respective release agreements, but because one factfinder resolved the ambiguity one way, and the other resolved it the opposite way.

Think about how this differs from how we resolve ambiguities in criminal statutes. When a criminal statute is ambiguous, it is the responsibility of the court to resolve that ambiguity by interpreting the statute as a matter of law. *See, e.g.*, *State v. Lee*, 268 Or App 587, 590, 342 P3d 1095 (2015). It is not the function of the jury, or the court sitting as factfinder, to resolve the ambiguity. This ensures, ultimately, that an ambiguous criminal statute is given one interpretation that applies with equal force to all those prosecuted under it. True, different trial courts may land in different places when interpreting an ambiguous statute, but, ultimately, our system of appellate review provides for one, uniform construction of an ambiguous statute.

If we were to take a different approach—allowing the factfinder to resolve ambiguities—in cases where the criminal conduct is defined not by the ambiguous words

of the legislature but, instead, by the ambiguous words of an agreement between the defendant and state—it would effectively allow for a case-by-case, factfinder-by-factfinder determination of what the criminal law is. This, as the majority opinion recognizes, would be in tension with the state constitutional guarantee of equality, and also raises questions of notice. It would also raise concerns of impermissible delegation: Under what constitutional authority, if any, can the legislature or a court give the factfinder a role in interpreting and defining a legal standard, the violation of which is a crime?

Adopting a rule of strict construction promotes that uniformity and avoids these other constitutional concerns by ensuring that it is the court, not the factfinder, that is deciding what the law requires. In sum, absent a clearer signal from the legislature that it intended to chart a different course, I agree that the correct course is to decide this case in a way that minimizes any constitutional concerns. That is what the majority opinion does.

In reaching a contrary conclusion, the dissenting opinion first concludes that the release agreement unambiguously required defendant to appear personally. 300 Or App at 351-54 (DeVore, J., dissenting). In that regard, it is worth observing that even the trial court did not appear to conclude that the agreement was unambiguous. Instead, in denying defendant's motion for judgment of acquittal, the court reasoned that the agreement "could be read" to require defendant's personal appearance. But the court did not conclude that it was so clear that it *had* to be read that way. Beyond that, because Oregon law allows for appearances through counsel (at least for some parts of criminal proceedings), it is difficult to see how a promise that "I will *** [a]ppear in court" unambiguously constitutes a promise to appear in person. It could just as well be a promise to appear through counsel.

The dissenting opinion also argues that "[t]he majority relies on irrelevant statutes," contending that ORS 135.030, ORS 135.360, ORS 136.040, and ORS 137.030 are not pertinent context for assessing the legislature's intentions with respect to a release agreement that does not

unambiguously require personal appearance. 300 Or App at 359 (DeVore, J., dissenting). But those provisions provide relevant context for determining what it means for a release agreement to require personal appearance, because they demonstrate that not all appearances need be personal. This allows for the possibility that some release agreements might require personal appearance, giving rise to the potential for criminal liability for failure to appear, whereas other release agreements might not require personal appearance, such that a breach would not give rise to criminal liability.[2]

Finally, the dissenting opinion points to the fact that Lane County's Supplementary Local Rules required defendant to appear personally. The dissenting opinion reasons that, "[b]ecause defendant is presumed to know the law, he may be understood to know that his promise to appear meant that he must appear personally as local rule required." 300 Or App at 355-56 (DeVore, J., dissenting). But, again, the gravamen of the offense of failure to appear is the violation of the *release agreement itself.* The question is not what defendant may or may not "be understood to know," but what obligations the agreement imposed on him and, in particular, whether the *agreement* imposed upon defendant an obligation of *personal* appearance, as distinct from a general obligation of appearance that, under Oregon law, could be satisfied by appearance through counsel. One way or another, the agreement itself is ambiguous as to how defendant must accomplish the required appearances.

**DeVORE, J.,** dissenting.

The majority holds that defendant's release agreement did not unambiguously require his *personal* appearance

---

[2] I note additionally that, in interpreting the misdemeanor failure to appear statute, ORS 162.195, earlier this year, the Supreme Court looked to the provisions of ORS chapter 135, which governs the pretrial release of defendants. *State v. McColly*, 364 Or 464, 481-85, 435 P3d 715 (2019). It would seem consistent with that approach to examine the statutes addressing whether and when a defendant is required to appear personally, and may not appear through counsel, to address what the legislature meant when it criminalized the failure to appear in violation of a release agreement requiring personal appearance and, in particular, in assessing whether we should construe ORS 162.205 to criminalize the violation of a release agreement that does not unambiguously condition a defendant's release on an agreement to appear personally in court, rather than through counsel.

at the date listed first in the agreement, such that he should have been acquitted of breaching the agreement and violating ORS 162.205. The majority deems it possible that the agreement required only the attendance of his attorney at that hearing. For a number of reasons, I read the release agreement to require defendant's personal appearance, and I am unpersuaded by the majority's rationale.

1. *The terms of the agreement itself plainly require defendant's personal appearance.* The majority omits the important introductory clause that begins the agreement. When read in context, together with the promises defendant made to secure his release from custody, it becomes obvious that defendant is personally making promises that can only be performed personally, not through counsel. In relevant part, defendant promised:

"*I*, ZACHARY MICHAEL LOBUE, promise on oath that *I* will:

"**1)** **Appear in court at the Lane County Circuit Courthouse in Eugene on Monday, May 01, 2017 at 2:30 p.m. and all other dates.** The Lane County Circuit Courthouse address is 125 E 8th Ave, Eugene, OR 97401, Tel: (541) 682-4020.

"\* \* \* \* \*

"**3)** Obey all other orders and requirements of the court, which includes cooperating with all court staff, specifically the Pretrial Services Office, and in a courteous and respectful manner.

"**4)** Not leave the state without the court's permission.

"\* \* \* \* \*

"**6)** I understand that I am required to keep in contact with the attorney of record in this matter, which includes any changes in my mailing or residential address or telephone number.

"**7)** Obey all laws and notify this court within 5 days, in writing, if I am arrested or charged with any new crime.

"**8)** Not use or associate with person [*sic*] using or dealing in illegal drugs. *I* understand that *I* may be required to submit to a Urinalysis and pay the $10.00 fee at the time of collection. \* \* \*

> **"9) Call the Pretrial Services office** until *I* **am acquitted, or sentenced or the case is dismissed. \* \* \*** *I* **understand that** *I* **must check in on assigned days even if** *I* **have court that day."**

(Boldface and uppercase in original; emphases added.) These promises leave no room for this court to find ambiguity.

The promises begin with the personal term "I," saying that "I, ZACHARY MICHAEL LOBUE, promise \* \* \* that I will" comply with the listed promises. The term "I" is unambiguous; it expressly refers to "Zachary Michael Lobue." The term "I" is a term of common usage in the English language, and it is understood to mean "the one who is speaking or writing." It is a "nominative pronoun of the first person singular by one speaking or writing to refer to himself as the doer of an action." *Webster's Third New Int'l Dictionary* 1119 (unabridged ed 2002). Defendant makes his promises in the first person as the "doer" of the listed "actions." In the opening clause, defendant defines the term "I" when he declares that "*I*, Zachary Michael Lobue, promise \* \* \* that *I* will: 1) [a]ppear in court" at the time set. (Uppercase and boldface omitted.) He does not promise, "I, Zachary Michael Lobue, promise \* \* \* that a *court-appointed counsel* will appear in court on my behalf." The "I" who will do the required things is "Zachary Michael Lobue." In turn, the terms "I" and "appear" must be read together. When read together, they mean that "Zachary Michael Lobue" is promising that "Zachary Michael Lobue" (*i.e.*, "I") will "appear" as required, not someone else.

Defendant's first promise—to "appear in court" at the courthouse—is personal. That is why the agreement provides him the date, time, and address of the courthouse, complete with a telephone number. His attorney would not need the address.

The other promises provide context to show that his first promise (to appear) is likewise personal. When defendant promises to obey all court orders and be courteous to staff, it is defendant who must do so. When defendant promises to keep in contact with his attorney, it is only defendant who can do so. When defendant promises not to associate with persons using illicit drugs, it is only defendant who can

do so. When defendant agrees to submit to a urinalysis, if asked, it is only defendant who can satisfy or violate that condition. His attorney cannot do so on his behalf. When defendant promises to call Pretrial Services and agrees to check in on assigned days, it is only defendant who can do so. And, when defendant promises to obey all laws, it is only defendant who can satisfy or violate that condition. His attorney cannot comply for him. From context, the only conclusion permitted is that the "I," who makes the promises in the opening line, is the same person who must perform the promises. That includes the promise to "[a]ppear in court at the Lane County Circuit Courthouse in Eugene on Monday, May 01, 2017 at 2:30 p.m." (Boldface omitted.)

2. *The release agreement expressly warns about the criminal sanction for failure to appear personally in court on May 1, 2017.* After defendant personally promised ("I, Zachary Michael Lobue, promise") to do the things listed, including to "*[a]ppear* in court *** on May 1," his release agreement went on to say:

"I understand that

"*****

"Failure to *appear* is punishable as a separate crime with 5 years in prison and $125,000 fine for a felony, or 1 year in jail and $6,250 fine for a misdemeanor."

(Emphases added.) That particular reference is *not* a reference to revocation of the release agreement and arrest on the original charge, but is instead a warning of a "separate crime" for failure to appear. That is a warning about ORS 162.205, which provides, in relevant part:

"(1)   A person commits the crime of failure to appear in the first degree if the person knowingly fails to appear as required after:

"(a)   Having by court order been released from custody or a correctional facility under a release agreement or security release upon the condition that the person will subsequently appear personally in connection with a charge against the person of having committed a felony[.]"

Once again context provides meaning. The promise to "appear" on May 1 uses the same word "appear" about which

defendant is warned with reference to punishment for a separate crime—a felony risking five years imprisonment and a $125,000 fine. Under ORS 162.205, the "person [who] commits the crime of failure to appear in the first degree" is the defendant, not his attorney. Thus, the agreement left no ambiguity about who promises to perform ("I, Zachary Michael Lobue") or what "appear" means (personally "[a]ppear in court" on May 1 at 125 East 8th Avenue, Eugene, Oregon).

3. *A simultaneous Notice to Return to Court prevented any uncertainty about defendant's promise to appear personally.* Defendant signed such a notice at the same time as he signed the release agreement. In that contemporaneous document, defendant was told "YOU MUST RETURN TO COURT FOR 35-Day Call (status) on May 01, 2017, at 2:30 p.m." Immediately above his signature were the words, "**I understand that a warrant will issue for my arrest if I do not appear in court as directed.**" (Boldface in original.) We know that we may consider such extrinsic evidence of the circumstances underlying the formation of an agreement to determine whether a particular contractual provision is ambiguous. *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773, *rev den*, 341 Or 366 (2006) (a trial court may "consider the circumstances underlying the formation of a contract to determine whether a particular contractual provision is ambiguous"). When defendant signed the notice along with the release agreement, the notice left no uncertainty about his promise to personally "return to court." The notice told him to "check in at the information booth on [his] scheduled date." (Boldface and uppercase omitted.) Defendant signed his name beneath the statements, made in the first person, "I," declaring his understanding that he would be arrested if he did not appear as directed.

4. *Law required defendant's personal appearance.* At the time of defendant's offense for failure to appear, Supplementary Local Rules for Lane County Circuit Court provided, as a uniform matter, that

"*Defendants* and their attorney must appear *in person* for criminal call at 2:30 pm on the date assigned

> at arraignments for the purpose of making the report required by UTCR 7.010(3). At the proceeding, the parties will report the status of the case to the presiding judge. If a settlement has not been reached, the case will be assigned to a judge for a settlement conference to be held that day. Prior to reporting for the settlement conference, the defendant and the defendant's attorney must go to the calendar clerk's office for a trial date if one has not already been scheduled. *A bench warrant will be issued for any defendant who fails to appear.*"

SLR 7.011 (2017) (emphasis added). Generally, court rules have the force of law, *Francis v. Mutual Life Ins. Co.*, 61 Or 141, 143, 114 P 921 (1911), and "[a]ll persons are presumed to know the law that is relevant to them," *Scherzinger v. Portland Custodians Civil Serv. Bd.*, 209 Or App 394, 407, 149 P3d 142 (2006). Moreover, defendant was represented by counsel who would well understand the rule's requirement that a defendant "must appear in person for criminal call." *See* SLR 7.011 (so providing). Because defendant is presumed to know the law, he may be understood to know that his promise to appear meant that he must appear personally as local rule required.

I refer to SLR 7.011 as law, requiring defendant's personal appearance, not for the purpose of saying defendant violated that law. Rather, SLR 7.011 shows what defendant is understood to know and what his agreement meant. That is because SLR 7.011, like the Notice to Return to Court, is further extrinsic evidence of the circumstances at the time of contracting. *See Batzer Construction, Inc.*, 204 Or App at 317. Together, the notice and SLR 7.011 provide meaning to the terms used in the release agreement and assure that there is no ambiguity.

5. *The majority's standard of scrutiny is problematic.* As a major premise, the majority sets up the principle that a criminal *statute* must not be vague. 300 Or App at 345. No doubt that principle has deep constitutional roots. *See id.* (citing *State v. Cornell/Pinnell*, 304 Or 27, 29, 741 P2d 501 (1987)) (involving Article I, sections 20 and 21, of the Oregon Constitution and the Fourteenth Amendment to the United States Constitution). Of course, the statute

is not at issue in this case. Nevertheless, the majority projects that principle onto the release agreement as a matter of contract interpretation and announces a standard of review making the issue whether the "agreement *unambiguously* requires personal appearance." 300 Or App at 346 (emphasis in original). Although I have no quarrel that the agreement, by its terms, must require defendant's personal appearance in order to find a violation of ORS 162.205, I question the majority's premise that gives a heightened standard of review to the agreement—akin to a constitutional issue. This issue is, as the majority seems to acknowledge, a matter of contract. In my opinion, because this is a plain matter of contract, we do not employ heightened scrutiny.

6.   *The rule of lenity is no "lens" with which to view this agreement.* The concurring opinion is helpful in explaining the majority's approach by saying "we should view defendant's release agreement through the lens of a contractual 'rule of lenity' (for lack of a better description) and strictly construe it against the state, much as we used to do with criminal statutes before the legislature abolished the rule of lenity."[1] 300 Or App at 347-48 (Lagesen, P. J., concurring). I respectfully submit that the problems in alluding to a rule of lenity are apparent. First, the rule of lenity was once a rule of statutory construction, not a rule of contract construction.[2] Second, the legislature abolished the rule of lenity in statutory

---

[1] Explains one writer:

"The rule of lenity, which requires strict construction of penal statutes in favor of the defendant, originated in sixteenth- and seventeenth-century English courts in response to the broad imposition of capital punishment mandated by the legislature. Once incorporated into United States common law, the rule of lenity came to represent the principles that individuals should have fair warning of what constitutes criminal conduct and that courts should not extend the reach of a statute beyond what the legislature clearly enacted."

Sarah Newland, *The Mercy of Scalia: Statutory Construction and the Rule of Lenity*, 29 Harv. CR-CL L Rev 197 (1994).

[2] In *State v. Partain*, 349 Or 10, 21, 239 P3d 232 (2010), the Supreme Court recalled:

"For a number of years, the court relied on what it called a 'rule of lenity.' That rule, which also was prudential, was used by the court in doubtful cases as a basis for giving criminal statutes a limited reading—*i.e.*, for limiting the sweep of legislative enactments."

construction.[3] And, third, the abolition of the rule as a matter of statutory construction does not mean that the rule should survive by analogy to be extended to agreements whose violation is a statutory offense. Rather, abolition of the rule should confirm that it is the wrong lens with which to read this agreement. It is the clouded lens of an aged rule.

7. *The agreement presents no danger of inconsistent results.* The concurring opinion posits the danger that, assuming the premise that the release agreement is ambiguous, two courts could reach inconsistent results. I believe, however, that the agreement is unambiguous, that any two courts should correctly reason that "I, Zachary Michael Lobue" is a personal promise, and that, in any event, a reported appellate opinion eliminates any danger of inconsistent results involving the language of this agreement.

8. *The majority starts with the state in a hole.* In framing the issue, the majority describes the state to argue "that the release agreement *impliedly* required defendant to appear in person." 300 Or App at 343 (emphasis added). That characterization puts the state in an unfairly weak position by suggesting that there was a concession where there was none. It may be true that no one argued that the words "appear *in person*" are found in the release agreement. However, the state argued, "The terms of the release agreement itself show that defendant was required to appear personally." The state did not use the words "impliedly" or "implicitly" in its brief. To the contrary, the state concluded:

> "Simply put, if the release did not require defendant to appear personally, then the terms of the agreement that describe defendant's promise to appear at the time and

---

[3] In *Bailey v. Lampert*, 342 Or 321, 326-27, 153 P3d 95 (2007), the Supreme Court explained:

"The rule of lenity—to the extent that such a rule exists—presumes that any ambiguities in a criminal statute that imposes multiple punishments for a crime should be resolved in favor of lenity at sentencing. Assuming that the rule ever truly existed, ORS 161.025(2) requires that we construe penal statutes 'according to the fair import of [their] terms,' rather than construing them 'strictly.' In other words, the legislature has eliminated the availability of any 'rule of lenity' by statute."

(Internal citations omitted.)

location of the hearing and that explain the potential crim-inal liability for failure to appear would make no sense."

In other words, the state did not concede silence or uncer-tainty in the terms of the agreement.

9. *The majority relies on irrelevant statutes.* At a critical point in its analysis, the majority observes that, as a general matter, Oregon statutes provide for a defendant's personal appearance "only at certain critical stages." 300 Or App at 345 (citing ORS 135.030; ORS 135.360; ORS 136.040; ORS 137.030). With that observation, the majority then con-cludes that "no statute prohibits appearance through coun-sel in felony cases," and therefore it could be consistent with the agreement for defendant to appear by counsel. *Id*. The majority describes the statutes accurately, but the statutes are irrelevant. They are not "context" for the release agree-ment, because they only set the minimum occasions for an appearance. They do not forbid a court from requiring other appearances nor forbid a defendant from agreeing to appear at other times. The issue posed by ORS 162.205 is whether defendant failed to appear, as required under the release agreement, after having been released from custody on the condition that he would subsequently appear personally on the charge. The release agreement, not the statutes, sets the time and place for defendant to appear. Moreover, SLR 7.011 demanded that defendant "must appear in person for crim-inal call." That is exactly what defendant's release agree-ment required. That is also what the simultaneous Notice to Return to Court said.

10. *The majority's precedent is concerning.* This may not be an isolated case. Akin to the shifts in statutory construction with *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and again in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009), imposition of strict construction of the release agreement in this case will open new disputes over the various terms of release agreements in other cases.

In the end, this matter should be simpler. Defendant was charged with possession of a stolen vehicle, and, after signing a release agreement, did not appear at the hearing described in the agreement. On this record, defendant did

not fail to appear due to any ambiguity in his agreement to appear in person. He breached the agreement and, despite warning, violated ORS 162.205. In my opinion, defendant erred, not the trial court.

For those 10 reasons, I respectfully dissent.